[635 NYS2d 217]

WARNER LEROY, Respondent-Appellant, v THEODORE SAYERS, Appellant-Respondent.

First Department, December 14, 1995

## APPEARANCES OF COUNSEL

*Michael F. Fitzgerald* of counsel, New York City (*Scolari, Brevetti, Goldsmith & Weiss, P. C.,* attorneys), for respondent-appellant.

*William Power Maloney* of counsel, Riverhead (*Esseks, Hefter & Angel,* attorneys), for appellant-respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

On February 28, 1992, plaintiff entered into a standard form written lease agreement with defendant for the rental of defendant's East Hampton premises consisting of an "ocean-front house with separate pool house, pool and tennis court" for the period from July 1, 1992 to September 8, 1992 for $135,000, of which $50,000 was paid at the lease signing and the balance, $85,000, was to be paid by June 28, 1992. The house contained valuable artwork, antique furniture and rugs and a variety of unique personal effects.

The lease required plaintiff to deposit $13,500 with defendant as security and pay a $13,500 broker's commission, conditions with which plaintiff complied. The lease also provided that "[i]f Tenant should default on this agreement prior to taking possession, Tenant shall lose his initial payment which shall be considered Landlord's liquidated damages". Significantly, the lease, at the insistence of plaintiff, who suffered from severe allergies, provided that "Landlord agrees * * * to remove all plants from house prior to lease period."

On March 19, 1992, almost three weeks after the lease was signed and three and one-half months before plaintiff was to take occupancy, a portion of the house was damaged by fire, causing substantial damage to the interior and its contents as well as the electrical and air-conditioning systems. Much of the damage, as to which defendant received $745,324 from his fire insurer, was smoke related. Aside from the reconstruction of the damaged portion of the house, extensive painting and cleaning were required in virtually every room "due to the extremely heavy soot and smoke damage." The grounds required replanting; much of the artwork was lost forever.

While defendant immediately began to repair the damage and prepare the house for July 1, 1992 occupancy, plaintiff, after visiting the premises to survey the damage, telephoned defendant to advise him of his concerns and, on April 6, 1992, wrote to request that he be released from the lease agreement. Citing his severe allergies to paint and smoke, plaintiff complained that he would be putting his health at risk. Receiving no response, plaintiff's attorneys wrote to defendant on April 14, 1992 to advise him that the fire had made performance of the lease impossible and that it was accordingly deemed cancelled.

Defendant's attorneys responded on April 21, 1992, rejecting the attempted cancellation of the lease and advising plaintiff that he had breached the agreement and that his $50,000 deposit would be retained as liquidated damages. By this time, plaintiff had rented other East Hampton premises for the 1992 summer season. In May, after completion of the repair and restoration, defendant rented the subject premises to a third party for the 1992 summer season for $150,000, less a $15,000 real estate brokerage commission, which defendant paid. Defendant claims that he was required to purchase additional furnishings to satisfy the substitute tenant at a cost of $26,224 and that he had incurred and will incur further legal expenses as a result of plaintiff's breach.

Plaintiff thereafter commenced this action against defendant to recover his $50,000 advance rent payment and the $13,500 security deposit, alleging six causes of action: a violation of Real Property Law § 227 based on defendant's refusal to return the funds; a breach of the lease's provisions regarding the apportionment of rent in the event of extensive damage to the premises; a breach of fiduciary duty under General Obligations Law § 7-103, which requires a landlord to deposit security funds and a rent advance payment in a segregated bank account in trust for the tenant; a request for a declaration that the lease's provision for the retention of the rent advance as liquidated damages constitutes a penalty and is unenforceable as a matter of law; a claim for money had and received; and for unjust enrichment. Aside from asserting his right to retain the $50,000, defendant also asserted in a counterclaim alleging breach of contract that he expended moneys to adapt the premises to the requirements of the substitute tenant and incurred legal fees.

After joinder of issue and limited discovery, plaintiff moved for partial summary judgment as to his claims for breach of fi-

duciary duty under General Obligations Law § 7-103 and declaratory relief with respect to the liquidated damages clause. Plaintiff's motion with respect to the violation of the statutory fiduciary duty was based on defendant's failure to deny the complaint's allegations that plaintiff's funds were commingled with other funds held by defendant, that defendant failed to pay interest on said funds, as required, and that defendant failed to notify plaintiff in writing of the name and address of the bank in which the funds were deposited. Defendant cross-moved for summary judgment on his counterclaim for breach of contract.

The IAS Court granted plaintiff's motion to the extent of declaring that the liquidated damages provision constituted an unenforceable penalty. It denied the motion as to the statutory fiduciary duty claim, finding that the alleged unanswered complaint allegations had in fact been denied and that defendant had deposited the moneys advanced by plaintiff in a special account and thus complied with the statute. The court granted defendant's cross motion for summary judgment on his counterclaim for breach of contract. Without explanation, it found that plaintiff had breached the lease agreement and referred the matter to a Referee to hear and report on damages.

 The parties cross-appeal, plaintiff from the determination that defendant had not violated General Obligations Law § 7-103 and, given, as plaintiff contends, the existence of factual issues with respect thereto, the award of summary judgment to defendant on his breach of contract claim; defendant appeals from the adverse declaration concerning the liquidated damages clause. We modify to grant plaintiff summary judgment on his claim based on defendant's breach of duty under General Obligations Law § 7-103 and to deny defendant's cross motion for summary judgment on his counterclaim for breach of contract.

In pertinent part, General Obligations Law § 7-103 provides:

"1. Whenever money shall be deposited or advanced on a contract or license agreement for the use or rental of real property as security for performance of the contract or agreement or to be applied to payments upon such contract * * * such money, with interest accruing thereon, if any, until repaid or so applied, shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made and shall not be mingled with the personal moneys or become an asset of the person receiving the same * * *.

"2. Whenever the person receiving money so deposited or advanced shall deposit such money in a banking organization, such person shall thereupon notify in writing each of the persons making such security deposit or advance, giving the name and address of the banking organization in which the deposit * * * is made * * *.

"3. Any provision of such a contract or agreement whereby a person who so deposits or advances moneys waives any provision of this section is absolutely void."

■ Subdivisions (1), (2) and (3) of section 7-103 are derived from Real Property Law former § 233, which "changed the legal relationship between [landlord and tenant] from debtor-creditor to trustee-*cestui que trust.* * * * [The landlord] does not owe a debt as he once did; he owes a duty not to commingle the deposit with his own funds. Upon a breach of that duty, he forfeits his right to avail himself of the deposit for any purpose." (*Matter of Perfection Tech. Servs. Press,* 22 AD2d 352, 356, *affd* 18 NY2d 644; *see, Mallory Assocs. v Barving Realty Co.,* 300 NY 297, 301-302.) A tenant has an immediate right to the funds in the event of a commingling. (*Sommers v Timely Toys,* 209 F2d 342 [2d Cir 1954].) Nor is the tenant's noncompliance with the lease terms a defense to a landlord's breach of his duty in this regard. (*See, Hartzell v Burdick,* 91 Misc 2d 758, 760.) Thus, there is no merit to defendant's argument that plaintiff's alleged repudiation of the lease agreement "relieved [him] of any obligation to maintain [advance] rent and security deposits in a segregated account".

Contrary to the IAS Court's finding, defendant, in his answer, failed to respond to plaintiff's allegations of commingling and his failure to notify plaintiff of the name and address of the banking organization into which the required deposit of funds was made. Thus, as a pleading matter, defendant is deemed to have admitted the facts giving rise to the statutory violations. (*See,* CPLR 3018 [a]; *Government Empls. Ins. Co. v Sheerin,* 65 AD2d 10, 11.) In opposing plaintiff's motion on this point defendant has asserted that the funds were deposited in a "special [bank] account, which I maintain exclusively for the East Hampton property." This, of course, is not to say that the account did not also contain nontrust funds. Nor does the statement inform us as to how defendant made use of the account during the period in issue or whether it was interest bearing. Needless to say, the endorsement "for deposit only" on the back of two checks, one for $50,000, the other for $13,500, and the stamped name of the bank on the back of the cancelled

checks do not qualify as notice in writing, as required by General Obligations Law § 7-103 (2), of the name and address of the bank into which the funds were deposited.

Since defendant failed to rebut the showing of his noncompliance with the requirements of General Obligations Law § 7-103, plaintiff was entitled to an award of summary judgment on the third cause of action for $63,500. While section 7-103 does not provide any specific penalty or sanction for its breach, it has been uniformly held that a commingling constitutes a conversion and entitles the tenant to the immediate recovery of his deposit or advances. (*State of New York v Thwaites Place Assocs.*, 155 AD2d 3, 9.)

On the issue of the enforceability of the lease's liquidated damages clause, we agree with the IAS Court's determination that the clause provides for a penalty. As the Court of Appeals has noted, "[l]iquidated damages constitute the compensation which, the parties have agreed, should be paid in order to satisfy any loss or injury flowing from a breach of their contract. (*Wirth & Hamid Fair Booking v Wirth*, 265 NY 214, 223.) In effect, a liquidated damage provision is an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement." (*Truck Rent-A-Ctr. v Puritan Farms 2nd*, 41 NY2d 420, 423-424.) Contracting parties may agree to such clauses provided they are neither unconscionable nor contrary to public policy. (*Supra*, at 424; *Mosler Safe Co. v Maiden Lane Safe Deposit Co.*, 199 NY 479, 485.) The utility of liquidated damages clauses is manifest in those cases where calculation of the amount of actual loss is difficult, if not impossible; in such case, the parties may agree in advance of the breach or default as to the amount of damages to be paid thereupon, rather than requiring proof and an assessment thereof in some future proceeding. (*Truck Rent-A-Ctr. v Puritan Farms 2nd, supra*, at 424.) In determining the enforceability of a liquidated damages clause, courts should consider "the surrounding circumstances and the apprehension of damage that existed in the minds of the parties at the time the contract was made." (36 NY Jur 2d, Damages, § 156, at 267.)

A liquidated damages provision "will not be enforced if it is against public policy to do so and public policy is firmly set against the imposition of penalties or forfeitures for which there is no statutory authority." (*Truck Rent-A-Ctr. v Puritan Farms 2nd*, 41 NY2d, *supra*, at 424.) "Generally whenever the damages flowing from a breach of a contract can be easily

established or where the damages fixed are plainly disproportionate to the injury the stipulated sum will be treated as a penalty." (*Seidlitz v Auerbach*, 230 NY 167, 173-174.) The purpose of such a clause is not to provide just compensation but, rather to secure performance "by the compulsion of the very disproportion." (*Truck Rent-A-Ctr. v Puritan Farms 2nd, supra*, at 424.) The promisor, fearing the punitive financial havoc that would befall him, would continue to perform, or the promisee, in the event he did not, would realize a reward far beyond his actual loss. In either event, an injustice would be done. Thus, the rule has evolved that a liquidated damages clause will be enforced if the sum stated is reasonably proportionate to the loss anticipated and the amount of actual loss would be difficult if not impossible to calculate. (*Supra*, at 425.) Whether a contractual provision is enforceable presents a question of law for the court. (*Mosler Safe Co. v Maiden Lane Safe Deposit Co.*, 199 NY, *supra*, at 485.) Applying the foregoing principles to the facts at hand, we agree with the IAS Court's determination that the amount stipulated to as liquidated damages does not bear a reasonable relation to the actual amount of probable damage that would befall defendant in the event of plaintiff's default before taking possession and, thus, that it constitutes a penalty.

█ █ Defendant argues that in assessing the validity of the liquidated damages clause the IAS Court applied an incorrect standard, that is, it viewed the issue of damages retrospectively rather than prospectively from the date of execution of the lease. In that regard, defendant cites the court's framing the issue of the reasonableness of the $50,000 figure in light of defendant's successful rerenting of the house for the same period and monetary consideration. In defending the reasonableness of the stipulated amount, he notes that the lease was executed on February 28, at the height of the rental season, and that, by agreeing to lease to plaintiff, he had to take his property from the pool of available lease opportunities when the market was most active. Thus, he argues, in viewing his damages prospectively, in February 1992, in the event plaintiff were to "default * * * prior to taking possession" on July 1, the $50,000 figure is not unreasonable as a measure of damages. After all, defendant points out, plaintiff could have attempted a cancellation of the lease as late as June 28th and defendant would have lost the entire summer rental value of his property. The weakness of this argument lies in its concession that defendant anticipated that the possible damages emanating from a breach could vary substantially depending

on when the breach occurred. A breach occurring early in the high rental season, where the chances of a rerental are good, as occurred here, might result in damages that are negligible. In arriving at a stipulated sum as liquidated damages, "[t]here must be some attempt to proportion * * * damages to the actual loss." (*Seidlitz v Auerbach,* 230 NY, *supra,* at 174.) Since the clause awarded the same exorbitant sum irrespective of the time of the breach and even in the instance where, concededly, the damages flowing from a breach and immediate rerental would be negligible, it constitutes a penalty and is unenforceable. Finally, summary judgment should not have been awarded to defendant on his counterclaim for breach of contract. Plaintiff argues that his refusal to take occupancy was justified because the fire and its resultant damage changed the character of the demised premises so that defendant could not provide the type of premises bargained for. A party's performance under a contract is excused when destruction of the subject matter of the contract or the means of performance makes performance objectively impossible. Of course, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract. (*Kel Kim Corp. v Central Mkts.,* 70 NY2d 900, 902.) On this point, the parties have different views as to the extent of damage to the premises and as to whether defendant could have delivered the property in the habitable condition as to which the parties agreed. The question of whether the premises were so damaged by fire that defendant could not satisfy his lease obligations presents an issue of fact which bars summary judgment.

Accordingly, the order of the Supreme Court, New York County (Carol H. Arber, J.), entered July 7, 1994, should be modified, on the law, to grant plaintiff's motion for summary judgment on the third cause of action and to deny defendant's cross motion for summary judgment on his counterclaim for breach of contract and, except as thus modified, affirmed, without costs or disbursements.

Rosenberger, Ross, Asch and Nardelli, JJ., concur.

Order, Supreme Court, New York County, entered July 7, 1994, modified, on the law, to grant plaintiff's motion for summary judgment on the third cause of action and to deny defendant's cross motion for summary judgment on his counterclaim for breach of contract and, except as thus modified, affirmed, without costs or disbursements.