143 F.3d 88
 L & B 57TH STREET, INC.,
Plaintiff-Counter-Defendant-Appellant-Cross-Appellee,
v.
E.M. BLANCHARD, INC. and Robert Blanchard,
Defendants-Counter-Claimants-Appellees-Cross-Appellants.
 Nos. 1572, 2084 and 1573, Dockets 97-7432, 97-7454 and 97-9154.
 United States Court of Appeals,
Second Circuit.
 Argued April 21, 1998.
Decided May 4, 1998.
 
 Thomas P. Higgins, New York City (Higgins & Trippett LLP), for Plaintiff-Counter-Defendant-Appellant-Cross-Appellee.
 Charles D. Hellman, New York City (Siller Wilk LLP), for Defendants-Counter-Claimants-Appellees-Cross-Appellants.
 Before WALKER, JACOBS, and CALABRESI, Circuit Judges.
 JACOBS, Circuit Judge:
 
 
 1
 L & B 57th Street, Inc. ("L & B") is a real estate investment company that entered into a ten-year lease with E.M. Blanchard, Inc. ("EMB") dated April 1, 1993 for the rental of three floors of L & B's building at 37 West 57th street in New York City. Pursuant to the lease, EMB posted a security deposit of $193,250 by letter of credit. Robert Blanchard--father of EMB's principal, Elizabeth Blanchard--guaranteed EMB's performance under the lease. Since EMB defaulted on the lease, and is now apparently judgment-proof, Blanchard's obligation under the guaranty is the sole issue presented on appeal by the landlord.[1]
 
 
 2
 Two provisions of the guaranty are particularly pertinent. First, the guaranty provides that:
 
 
 3
 (1) the liability of the Guarantor is primary, shall not be subject to deduction for any claim of off-set, counterclaim or defense which Tenant may have against Owner, and Owner may proceed against Guarantor separately or jointly, before, after, or simultaneously with any proceeding against Tenant or default.
 
 
 4
 The guaranty also contains a so-called "Good Guy" clause, limiting the guarantor's liability:
 
 
 5
 Notwithstanding anything herein to the contrary, Guarantor's obligations herein shall only be applicable with respect to period [sic] prior to such time as Owner obtains vacant, unencumbered possession of the Demised Premises, free and clear of all tenants, subtenants and occupants.
 
 
 6
 EMB was in financial difficulty almost from the outset of the lease. L & B initiated a summary proceeding for nonpayment of rent in the New York City Civil Court in April 11, 1994, which was withdrawn without prejudice in June 1994, after EMB made payments that almost covered its arrears. In the meantime, however, on April 26, 1994, L & B drew down the letter of credit and forwarded the proceeds (after an accidental detour) to a security deposit account that it maintained.
 
 
 7
 On July 31, 1994, again behind in its rent, EMB vacated the second floor of the premises and returned the keys to a maintenance worker. According to EMB and Blanchard, L & B's agent had agreed orally to accept the surrender of the second floor in exchange for a corresponding rent reduction.
 
 
 8
 By October, 1994, L & B commenced another nonpayment proceeding. EMB vacated the remainder of the premises on December 30, 1994. Shortly thereafter, L & B reentered and terminated the lease. In July, 1995, the security deposit funds were withdrawn from the landlord's security deposit account and used for L & B's general purposes.
 
 
 9
 On May 12, 1995, L & B commenced the current lawsuit against both EMB and Blanchard as guarantor. On April 16, 1996, the district court granted summary judgment, ruling
 
 
 10
 (1) that Blanchard's liability under the guaranty was for all arrears prior to the date EMB vacated the premises minus the security deposit;
 
 
 11
 (2) that Blanchard was not liable for any charges (including attorney's fees and reletting expenses) that arose after the date that EMB vacated; and
 
 
 12
 (3) that the alleged oral modification of the lease (reducing the rent in exchange for the surrender of the second-floor portion of the lease premises) was unenforceable.
 
 
 13
 L & B moved for reargument and amendment. Except for the addition of an award for prejudgment interest, the district court adhered to its initial decision. This appeal followed.
 
 DISCUSSION
 
 14
 I. Application of the Security Deposit to Arrears that Accrued before December 30, 1994
 
 
 15
 The district court held that the landlord's use of the security deposit for the landlord's general purposes operated as a credit against the arrears then owed by EMB, and that the credit applied first to the oldest arrears even though the oldest arrears were already secured by the guaranty and the later arrears were not. We agree.
 
 
 16
 The first question (which is relatively uncomplicated) is whether the withdrawal of the proceeds of the letter of credit operated to reduce EMB's liability. Once L & B had used the funds for its own general purposes in July, 1995, and the funds were no longer segregated in a security deposit account, the funds should have been credited to EMB as a payment. L & B characterized the funds as an "open credit" unapplied to reduce EMB's arrears, but that characterization does not control the legal consequence of the transaction. As long as the proceeds were segregated in the separate account, defendants could not claim a reduction in EMB's debt. See Fore Improvement Corp. v. Selig, 278 F.2d 143, 145-46 (2d Cir.1960); In re Spinelli, 36 B.R. 819, 821-22 (Bankr.E.D.N.Y.1984). Once L & B had treated the funds as its own, however, defendants' debt should have been reduced accordingly. See LeRoy v. Sayers, 217 A.D.2d 63, 635 N.Y.S.2d 217, 220-21 (1st Dep't 1995).
 
 
 17
 Part of L & B's "open credit" argument is that because the tenant has a duty to replenish the security deposit, crediting the security deposit against the amount due is improper. However, the duty to replenish the deposit account ends with the lease, see In re W.T. Grant Co., 13 B.R. 198, 200 (Bankr.S.D.N.Y.1981) (once lease is terminated, tenant is liable only for actual damages or liquidated damages provided for in the lease), aff'd, 36 B.R. 939 (S.D.N.Y.1984); EMB's lease terminated in December, 1994, when L & B regained vacant possession of the leased premises.
 
 
 18
 The biggest question in dollar terms is whether the proceeds of the letter of credit should be applied to the guaranteed--or non-guaranteed--portion of EMB's debt. As a general rule, payment is applied to debts in the order in which they accrue. See, e.g., Carson v. Federal Reserve Bank, 254 N.Y. 218, 232, 172 N.E. 475 (1930); Beyer Bros. v. Kowalevich, 89 A.D.2d 1005, 454 N.Y.S.2d 444, 445 (2d Dep't 1982) ("[U]sually, the funds will be applied to the debts in the order of time in which they stand in the account.... The guaranteed debt being the first in time should be retired first."). L & B advances several arguments in support of its theory that this rule should not apply here, and that the draw-down of the letter of credit should not operate to reduce the earliest arrears--which happen to be the debts guaranteed by Blanchard.
 
 
 19
 First, L & B contends that Blanchard's assertion of this defense is untimely. We disagree. Blanchard timely pleaded as an affirmative defense that his obligations "under the Guaranty, if any, must be reduced by the amount of a certain letter of credit issued by First National Bank of Osceola in favor of plaintiff, which letter of credit was drawn down by plaintiff in April, 1994 " (emphasis added), which was the date that the funds were placed in the security deposit account. L & B contends that this pleading gave inadequate notice, because the district court ultimately determined that the date as of which L & B had paid itself the funds was July, 1995 (when it exercised unfettered control over the funds) instead of the April, 1994 date pleaded in Blanchard's answer. We think L & B was given adequate notice of the defense, notwithstanding the reference to the earlier transaction involving the letter of credit instead of the transaction that the district court properly found to be determinative. Moreover, as the district judge noted, Blanchard argued the July, 1995 date at oral argument on the summary judgment motion, and L & B cannot claim it had no warning that this defense would be raised.
 
 
 20
 Second, L & B argues that Blanchard waived all defenses and set-offs in the first of the two guaranty provisions quoted at the outset of this opinion. However, the credit at issue is not a true set-off: Blanchard does not urge that L & B owes him money, or that L & B owes anything to EMB; Blanchard happily acknowledges that the landlord is entitled to keep the security deposit. But he asserts that the effect of that transaction is to reduce the amount of the debt that Blanchard guaranteed. As Judge Baer determined, this is an argument as to the amount actually due. The language of the guaranty (unconditional as it is) is not a waiver of every defense to a damages claim, and does not foreclose a challenge to the calculation of the amount owed. See, e.g., Puntillo Assocs. v. Land, 222 A.D.2d 425, 634 N.Y.S.2d 546, 546-47 (2d Dep't 1995) (granting summary judgment on liability based on "unconditional terms" of a personal guaranty, but remanding for trial to determine meaning of acceleration of rent and mitigation of damages clauses); Rusch Factors v. Sheffler, 58 A.D.2d 557, 396 N.Y.S.2d 374, 376 (1st Dep't 1977) (enforcing similar clause as to liability but remanding for determination of damages because plaintiff had received payments in reduction of claims against the guarantor).
 
 
 21
 Third, L & B contends that it elected to apply the letter of credit proceeds to EMB's account rather than Blanchard's. This is a strange argument because Blanchard's liability is entirely derivative of EMB's: nothing in the record suggests that Blanchard had any obligation to L & B on his own account. L & B argues that in this case the usual principle--that an undesignated payment is applied to retire the oldest debt first--has the ironic and inequitable result of benefitting a guarantor who otherwise would pay more. That argument takes insufficient account of the long-standing solicitude of New York law for the interests of guarantors. See, e.g., Merchants' Nat. Bank v. Comstock, 55 N.Y. 24 (1873) (holding that a creditor holding collateral for a guaranteed obligation holds the collateral in trust for the guarantor and must preserve it for the benefit of the guarantor); see also Port Distrib. Corp. v. Pflaumer, 880 F.Supp. 204, 208 (S.D.N.Y.) (interpreting parties' agreement to require recourse first to collateral and to guarantor only to the extent that collateral proved inadequate), aff'd, 70 F.3d 8 (2d Cir.1995) (per curiam ); Benderson Dev. Co. v. Schwab Bros. Trucking, Inc., 64 A.D.2d 447, 409 N.Y.S.2d 890, 896 (4th Dep't 1978) (holding that a guarantor may be released from its obligation where debtor and creditor enter into agreement impairing the collateral). In this case, the security deposit must be credited against the portion of the debt that was subject to Blanchard's guaranty. Cf. Walther v. Bank of New York, 772 F.Supp. 754, 761-62 (S.D.N.Y.1991) (refusing to impose a requirement that collateral be applied to a guaranteed obligation before another where the express terms of the guaranty provided that the creditor was under no obligation to resort first to the collateral).
 
 
 22
 II. Blanchard's Liability for Reletting Expenses and Attorney's Fees
 
 
 23
 L & B seeks to hold Blanchard liable for certain expenses ($263,484.01 of reletting expenses, including attorney's fees, brokerage fees, and improvement of the property for the new tenant, plus $55,248.71 of attorney's fees incurred in connection with this lawsuit), all of which concededly accrued after December 30, 1994, the date on which EMB vacated the premises. L & B relies on Blanchard's guaranty of
 
 
 24
 the full and faithful performance and observance by Tenant ... of all terms, covenants, conditions, agreements, restrictions, and limitations of the Lease including without limitation, the payment by Tenant of all Fixed Annual Rent, Additional Rent, and all other charges and the Rules and Regulations prescribed by Owner and the provisions of Article 34 and Paragraph 52H of the Lease together with the payment of interest and all reasonable costs including attorneys' fees and other expenses incurred by Owner in enforcing such performance and observation.
 
 
 25
 Blanchard in turn relies on the Good Guy clause, which provides that the guarantor's "obligations herein shall only be applicable to [the] period prior" to the tenant's surrender of the vacant premises. The parties agree that this occurred on December 30, 1994 or January 1, 1995 and that the reletting expenses and attorney's fees were all incurred thereafter. Because the Good Guy clause provides that its application is "notwithstanding anything herein to the contrary," it trumps the clause guaranteeing the payment of attorney's fees and other expenses.
 
 
 26
 L & B further argues that while the guarantor's obligations ceased as of the date L & B obtained vacant possession, the damages flowing from Blanchard's breach of his obligation continued to mount and are properly chargeable to him, relying on Town of Tonawanda v. Stapell, Mumm & Beals Corp., 240 A.D. 472, 270 N.Y.S. 377, 379 (4th Dep't), aff'd, 265 N.Y. 630, 193 N.E. 419 (1934) (declining to limit damages even though period of obligation was limited to one year). The distinction between damages and obligations is not useful to L & B here, however, because Blanchard's only obligation was to pay amounts that EMB owed with respect to the period prior to EMB's vacating of the premises.[2] Under the plain terms of the guaranty, therefore, Blanchard was not liable for these expenses.
 
 
 27
 III. The Alleged Oral Modification of the Lease
 
 
 28
 Defendants' cross-appeal seeks to enforce the alleged oral agreement to reduce the rent upon EMB's surrender of one single floor of the premises. The lease itself requires that all modifications be in writing (a requirement that is consistent with the statute of frauds). Such a clause is enforceable under New York law. See N.Y. Gen. Obl. L. § 15-301(1).
 
 
 29
 As defendants argue, there are circumstances in which such a clause will not bar enforcement of an oral modification of a lease. In Rose v. Spa Realty Assocs., 42 N.Y.2d 338, 397 N.Y.S.2d 922, 366 N.E.2d 1279 (1977), for example, the court noted that the writing requirement can be overcome by a showing of either part performance or estoppel. See id. 397 N.Y.S.2d at 926-27, 366 N.E.2d at 1282-84. Under Rose, however, the partial performance must be "unequivocally referable to the oral modification." Id. at 926, 366 N.E.2d at 1283. Similarly, "conduct relied upon to establish estoppel must not otherwise be compatible with the agreement as written." Id. at 927, 366 N.E.2d at 1283. Here, EMB's conduct in vacating the second floor (and turning over the keys) does not meet that stringent standard. Although EMB argues that the rent deal is the only possible reason for vacating a portion of the premises, it is just as likely that EMB unilaterally vacated the floor to reduce its insurance and maintenance costs, or in the hope that L & B would re-rent it and abate the rent.
 
 
 30
 EMB and Blanchard argue that the district court improperly granted summary judgment in light of the existence of disputed facts as to the existence of the oral agreement, the motivation underlying EMB's conduct, the actual or apparent authority of plaintiff's agents to enter into a lease modification, etc. This argument misses the point. The undisputed facts show that the lease required all modifications to be in writing. To overcome that, EMB and Blanchard had to show (under the Rose standard) that the only inference possible from their conduct is that an oral agreement had been concluded between the parties. In this case, the existence of a competing inference, rather than precluding summary judgment, makes summary judgment for L & B appropriate. The district court correctly concluded that the alleged oral modification of the lease was unenforceable.
 
 CONCLUSION
 
 31
 For the reasons set forth above, the judgment of the district court is affirmed.
 
 
 
 [1]
 EMB's cross-appeal concerns only the calculation of its undisputed liability: EMB contends that it is entitled to a proportional reduction in rent pursuant to an alleged oral modification of the lease from the time that it vacated the second floor of the leased premises
 
 
 [2]
 Of course, some damages may arise "with respect to" the period of obligation, even though they do not become apparent until after the cutoff. Such damages, e.g., post-vacancy interest accruing on pre-vacancy rent arrears, might well be covered by the guaranty. The expenses that L & B seeks to assess against Blanchard, however, do not fall into such a category