*965 OPINION OF THE COURT
Diane A. Lebedeff, J.
Plaintiffs seek to recover their security deposit for a residential rental unit. This matter poses the unexpectedly novel issue regarding jointly owned real property of the extent to which each co-owner has individual responsibility and accountability for the proper treatment and potential return of a leasehold security deposit.
In May of 2003, defendant landlords John and Janina Pearse, husband and wife, rented the second and third floors of a residential building located at 15 East 77th Street, Manhattan, to the plaintiff tenants, the McMasters. Plaintiffs provided a security deposit of $21,000, which was deposited in a high yield savings account in the name of defendant John Pearse only. In July of 2004, shortly after the tenants vacated, the account was liquidated and there was a refusal to return the security deposit to plaintiffs. Plaintiffs sue to recover the security deposit upon theories of conversion and breach of contract and seek summary judgment on those claims (CPLR 3212).
Defendant John Pearse passed away on June 21, 2005, and his entire interest in the property passed to his wife, codefendant Janina Pearse. The claims against John Pearse are held in abeyance and not reached herein, for it is well settled that the death of a party stays the action as to the decedent and—pending the substitution of a legal representative—any determination would be a nullity (see CPLR 1015). Accordingly, the court’s consideration is limited to the claims against defendant Janina Pearse.
Security Deposit Statutory Obligation
A landlord’s obligation in relation to a security deposit is clearly spelled out in General Obligations Law § 7-103 (1), which provides that security deposits tendered in relation to an
“agreement for the use or rental of real property as security . . . shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made and shall not be mingled with the personal moneys or become an asset of the *966 person receiving the same” (emphasis added).[1]
The statute’s directions are strictly construed (Fore Improvement Corp. v Selig, 278 F2d 143, 146 [2d Cir 1960] [the security deposit law “is emphatic in its language and is declarative of the public policy of New York State” and “such statutes frequently have to be literally construed to obtain the desired compliance”]).
The law’s restriction upon a landlord’s treatment of a rental security deposit is recognized as a firm and fixed feature of New York landlord-tenant relations (1 Dolan, Rasch’s Landlord and Tenant—Summary Proceedings § 13:27 [Deposit as trust fund], at 591 [4th ed] [“provision of the General Obligations Law requiring security deposits to be placed in a trust account is part of a lease contract as if it had been actually written into it”]). Where the landlord abides by the law, the deposit provides security to the landlord against a breach of the lease (Glass v Janbach Props., 73 AD2d 106, 108-109 [2d Dept 1980] [the security deposit law “should not serve to obscure the basic nature of a security deposit. A landlord requires such a deposit, although still the property of the tenant, to attain the status of a protected creditor should the tenant breach the lease” and to serve as “adequate protection should the finances of a tenant falter”]).
However, just as surely, if the landlord fails to segregate properly a security deposit, or mingles it with personal funds, the law views such as an illegal conversion of the security deposit (Kelligrew v Lynch, 2 Misc 3d 135[A], 2004 NY Slip Op 50220[U], *2 [App Term, 1st Dept 2004]; LeRoy v Sayers, 217 AD2d 63 [1st Dept 1995]; Sommers v Timely Toys, Inc., 209 F2d 342 [2d Cir 1954]). In such a case, if the tenant has vacated the premises, the right to a refund is immediate and shall not be delayed or postponed until the resolution of a landlord’s claim *967 for some or all of the security deposit (LeRoy v Sayers, supra).[2] This right to immediate recovery of a security deposit rests upon fundamental principles explored in the leading case of Matter of Perfection Tech. Servs. Press (Cherno-Delecar Realty Corp.) (22 AD2d 352 [2d Dept 1965], affd without op 18 NY2d 644 [1966]), in which the Appellate Division, Second Department, explained:
“[The security deposit law] changed the legal relationship between the [landlord and tenant] from debtor-creditor to trustee-cesízzz que trust. The inability of the commingling landlord to set off claims against the deposit flows from the change in his legal status. [The landlord] does not owe a debt as he once did; he owes a duty not to commingle the deposit with his own funds. Upon a breach of that duty, he forfeits his right to avail himself of the deposit for any purpose. To allow him to set off the deposit against his individual claims is to treat the deposit as a debt and the landlord as a debtor— precisely the situation which [the security deposit law] was enacted to change.” {Id. at 356 [emphasis added].)
Based upon this clear precedent, the court must reject the request that any right to a refund of the security deposit to these out-of-possession tenants be deferred until the resolution of other outstanding issues.
The plaintiff tenants here have vacated and, accordingly, the court turns to the issues of (1) whether the record establishes a breach of the obligation to hold a security deposit in trust and not to mingle the deposit with personal assets, and (2) if so, and even assuming arguendo that the deceased co-owner may well have been actively responsible for any breach, whether the ap *968 parently passive co-owner can be held jointly and severally liable for the obligation to refund the security deposit.
Establishing a Breach of Security Deposit Obligations
As can be discerned from case law, three factors emerge which bear upon a determination of a landlord’s breach of statutory obligations concerning maintenance of a security deposit: (1) whether the deposit was held in a segregated account and in the name of the actual landlord; (2) whether the landlord has responded to demands for information regarding the maintenance of the security account, either prior to or during litigation; and (3) whether the landlord complied with the independent duty to give the tenant notice of any depository bank and its address (General Obligations Law § 7-103 [2]). It significantly eases analysis to address each factor separately.
First, the title of the security deposit account clearly is of utmost significance. In Ferguson v Vaughan Imported Cars (9 Misc 2d 188 [App Term, 1st Dept 1957]), addressing section 233 of the Real Property Law, from which General Obligations Law § 7-103 was derived, the court observed (at 189):
“The requirement is not only that the person shall not mingle the money with his own but he shall hold on to it actually or constructively. Placing the money received by the landlord as security in the name of another living person is not a holding within the requirements of this section.”
The landlord’s duty is to hold the funds in a form which identifies a security deposit as something other than a landlord’s personal funds (see Kelligrew v Lynch, 2 Misc 3d 135[A], 2004 NY Slip Op 50220DJ], *2 [App Term, 1st Dept 2004] [“commingling of a security deposit with a landlord’s personal funds is a conversion”]; Finnerty v Freeman (176 Misc 2d 220, 221-222 [App Term, 2d & 11th Jud Dists 1998] [where landlord placed “security deposit in cash in a sealed envelope” which also contained a signed and witnessed letter averring that the cash was a security deposit “under the circumstances presented here constitutes sufficient compliance with the statutory mandate to hold a tenant’s security fin trust’ ”]).
In this instance, it is admitted that the deposit was placed in a savings account bearing only the individual name of one co-owner. This undisputed fact supports a finding of conversion of trust funds.
*969 Second, as to being forthcoming in response to inquiries about the security deposit, any failure to provide complete information on account maintenance supports an inference of commingling (Garfield v Howard, 2002 NY Slip Op 40422 [U], *2 [App Term, 2d & 11th Jud Dists 2002] [“In view of defendants’ failure to respond to plaintiffs’ assertion that they had commingled plaintiffs’ security deposit with their personal funds and of their failure to notify ... as required by section 7-103(2) of the General Obligations Law, an inference of commingling arose which defendants failed to rebut, entitling plaintiffs to summary judgment for the return of their security deposit”]). Indeed, a landlord is best advised to give a complete historical account of the manner in which the funds were treated and the account was maintained if the landlord wishes to defeat a summary judgment motion claiming conversion of a security deposit (LeRoy v Sayers, supra, 217 AD2d at 68 [“In opposing plaintiffs motion on this point defendant has asserted that the funds were deposited in a ‘special [bank] account, which I maintain exclusively for the . . . property.’ This, of course, is not to say that the account did not also contain nontrust funds. Nor does the statement inform us as to how defendant made use of the account during the period in issue”]).
In this case, the defendant failed to give full information about the account. Defendant Janina Pearse refused to identify the account early in this litigation and, in response to an interrogatory, objected to disclosure of “confidential financial information” and revealed only the name of the bank, but not the bank address, account number, or account name. Even in the face of this summary judgment motion, although providing more information, the defendant has only presented bank statements for the opening and closing months of the claimed security account, which is a far cry from a persuasive accounting for the manner in which these funds were held. The refusal to provide complete disclosure and the scanty showing constitute another failure to rebut an inference of commingling (Garfield v Howard, supra).
Third, as to the statutory notice regarding security funds deposited in a bank, a separate notice of any depository bank must be given (General Obligations Law § 7-103 [2] [“(whenever the person receiving money so deposited or advanced shall deposit such money in a banking organization, such person shall thereupon notify in writing each of the persons making such security deposit or advance, giving the name and address of the banking organization in which the deposit of security *970 money is made, and the amount of such deposit”]). The failure to give the statutory notice gives rise to an adverse inference of commingling (Dan Klores Assoc. v Abramoff, 288 AD2d 121, 121-122 [1st Dept 2001] [a “showing that defendant failed to give plaintiff written notice of the banking institution that held plaintiffs security deposit . . . permitted an inference of commingling at the time of lease expiration, in violation of General Obligations Law § 7-103 (1), that defendant failed to rebut. As a result of such commingling, defendant forfeited any right he had to avail himself of the security deposit ‘for any purpose’, entitling plaintiff to its ‘immediate’ return notwithstanding that plaintiff may itself have breached the lease” (citations omitted)]).
In this case, given that the statutory notice was not given, the court must find an adverse inference of commingling arises from the record. Such a determination cannot be defeated by the defendant’s argument that this obligation was satisfied because the lease set forth the name of the bank and its address; such a lease provision does not and could not waive the requirement that the statutory notice be given after the deposit is made (General Obligations Law § 7-103 [3] [“Any provision of ... a contract or agreement whereby a person who so deposits or advances money waives any provision of this section is absolutely void”]; see LeRoy v Sayers, supra, 217 AD2d at 68-69 [“the stamped name of the bank on the back of the cancelled checks do(es) not qualify as notice in writing”]; see also, as to statutory notice, Shandwick USA v Exenet Tech., 192 Misc 2d 280 [Civ Ct, NY County 2002, Rakower, J.]).
Here, all factors support a finding that defendant actively or passively breached the obligation to maintain in trust a security deposit under the name of the co-owners.
A Co-Owner’s Obligation for Security Deposit Trust Funds
As to the question of the co-owner’s responsibility for statutory compliance, as previously detailed, the obligation is to hold the security deposit as a trustee. As a general principle, “a trustee in New York is held as much accountable for damage to the trust by reason of negligent inaction as for affirmative wrongdoing” (Matter of Goldstick, 177 AD2d 225, 238 [1st Dept 1992], mod on rearg 183 AD2d 684 [1st Dept 1992]).
*971 In this case, the property was leased jointly by the two named defendants, with both names appearing on the lease as lessors.[3] No argument is raised to defeat the observation that each co-owner bears the obligations of a cotrustee in relation to a security deposit. A cotrustee
“may delegate the exercise of a trust power to a fellow trustee, especially where the latter has an expertise in some particular aspect of the trust management; but that does not give a trustee the right to abdicate [the] duty to be personally ‘active in the administration of the trust’ ” (id.; Bogert, Trusts § 92, at 331 [6th ed]; see 90A CJS, Trusts § 380 [Form or manner of deposit] [a trustee “may not deposit (funds) in his or her own name as an individual, or in any name other than that of the trust or in his or her name as trustee, or commingle the trust account with his or her own in the bank or depositary. If he or she does, it constitutes a conversion of the fund for which he or she is liable”]).
Nor is there any argument available that the marital or spousal relationship between the co-owners varied the obligations of Janina Pearse, who was a married woman at the time of the critical events. Under General Obligations Law § 3-301, a married woman’s marital status is irrelevant to contractual obligations, and subdivision (1) thereof provides that “[a] married woman has all the rights in respect to property . . . and to make contracts in respect thereto with any person, including her husband, . . . and be liable on such contracts, as if she were unmarried.” A married woman’s economic emancipation and independent rights and obligations in relation to real property have long been recognized under New York law (see L 1848, ch 200, § 3, as amended by L 1849, ch 375 [known as the Married Women’s Property Act]; generally, Richard H. Chused, Married Women’s Property Law: 1800-1850, 71 Geo LJ 1359 [1983]; Richard H. Chused, History’s Double Edge: A Comment on Modernization of Marital Status Law, 82 Geo LJ 2213 [1994] [observing that such enactments followed shortly after the notable Seneca Falls Convention of 1848 and were only partially based upon suffrage and feminist theories then being advanced]). And, of course, to the extent the wife designated the *972 husband as her agent for the treatment of the security deposit, she cannot escape liability (45 NY Jur 2d, Domestic Relations § 271 [Managing wife’s business] [“Pursuant to the power vested in married women to carry on a trade, business, or occupation, a married woman may designate her husband as her agent to manage her trade, business, or occupation, and to purchase property therefor. Where she does so she becomes legally liable for the acts of her husband as such agent, the same as though the marital relation did not exist”]).
It remains true that a landlord renting real property in New York has an unwavering and absolute obligation to comply with the laws relating to security deposits. The obligation here is consistent with general principles of New York law which do not permit a cofiduciary to claim exemption from responsibility based upon passivity, ignorance of the law, or even the contrary advice of counsel (see, Matter of Rothko, 43 NY2d 305, 320 [1977] [a cofiduciary “who knows that (another cofiduciary) is committing breaches of trust and not only fails to exert efforts directed towards prevention but accedes to them is legally accountable even though . . . acting on the advice of counsel”]).
Accordingly, no argument has been presented which would defeat the right of plaintiffs to recover the security deposit from the co-owner who stands before the court.
Conclusion
The standard for evaluating motions for summary judgment is well established.
“To obtain summary judgment it is necessary that the movant establish [a] cause of action or defense ‘sufficiently to warrant the court as a matter of law in directing judgment’ in [movant’s] favor (CPLR 3212, subd [b]), and [movant] must do so by tender of evidentiary proof in admissible form” (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065,1067 [1979]).
The plaintiffs have met their burden and the motion for summary judgment is granted.
Plaintiffs are awarded judgment against defendant Janina Pearse on the cause of action for conversion in the amount of $21,000. The calculation of interest thereon, and the balance of the claims, are severed and shall continue. Costs and disbursements shall be held in abeyance to abide the event.

. For a history of the New York treatment of security deposits, see Park Holding Co. v Johnson (106 Misc 2d 834, 835-837 [Civ Ct, NY County 1980, Dankberg, J.]), which tracks the changes from the common-law view as set forth in Matter of Atlas v Moritz (217 App Div 38, 42 [4th Dept 1926]), through the 1935 enactment of Real Property Law § 233, and the reenactment and recodification of substantially similar provisions in General Obligations Law § 7-103. For a review of the nationwide status of security deposit laws, see John E Ludington, Annotation, Landlord-Tenant Security Deposit Legislation, 63 ALR4th 901.

. If the tenant remains in possession and has not sued to recover the deposit, a landlord has the opportunity to cure (Milton R. Friedman, Friedman on Leases § 20.4 [Nature of Security Deposit—Statutes], at 1293 [4th ed, PLI 1997] [“Commingling by landlord is a conversion, which gives tenant an immediate right to recover the deposit without offset by reason of any claim by landlord. Landlord’s right to the security is revived if the commingling ceases before tenant brings an action to recover the deposit. But segregation after expiration of the term and vacation by tenant is held too late for such revival”]; see, as to bankruptcy treatment, In re Spinelli, 36 BR 819, 821 [Bankr ED NY 1984] [“However, if a landlord restores and segregates the once-commingled funds prior to bankruptcy or prior to an action having been commenced for the conversion, the statutory ‘trust’ may be reinstated, and the tenant or trustee in bankruptcy will no longer possess a cause of action for the conversion”]).

. The deed has not been presented, but both defendants are named as lessors, indicating co-ownership of the property. There is no evidence as to whether the joint ownership was in the form of a joint tenancy, a tenancy in common, or a tenancy by the entirety (see, 24 NY Jur 2d, Cotenancy § 1).