JOHN HOPKINS et al., Respondents, *v.* AMTORG TRADING CORPORATION, Impleaded with VITA FOOD PRODUCTS, INCORPORATED, et al., Appellants.

First Department, December 23, 1942.

*Samuel E. Swiggett* of counsel (*Andrews, Baird & Shumate,* attorneys), for appellants.

*Harold P. Seligson* of counsel (*James Marshall* and *Ruth F. Rosenthal* with him on the brief; *Marshall, Bratter & Seligson,* attorneys), for respondents.

COHN, J. The action is against a grocery storekeeper and a distributor for negligence which resulted in personal injuries sustained by plaintiffs in eating contaminated canned crabmeat purchased at the store of the grocer in the State of New Jersey. There is also an action for breach of warranty against the storekeeper.

John Hopkins resided in Irvington, New Jersey, with his wife, Addie Hopkins, and their two sons, Howard John Hopkins and Richard Hopkins. All four are plaintiffs. On April 21, 1939, Richard Hopkins, at the request of his mother, purchased a can of "Chatka" crabmeat at a store operated in that town by defendant National Grocery Company. The store manager advised Richard that "Chatka" was a good brand. The can of food was normal in appearance. Between eleven A. M. and noon, Richard delivered the container to his mother who immediately prepared a crabmeat salad in a glass bowl, covered it with cellophane and placed it in the refrigerator. The empty container was dropped into a receptacle in the kitchen. At about six o'clock that evening plaintiffs ate the crabmeat salad. Shortly thereafter all four became violently ill and each one exhibited symptoms which commonly arise in food poisoning, including intense pains in the abdomen, severe vomiting, weakness of pulse and a condition of shock.

The next morning an examination of pieces of the crabmeat found remaining in the container showed that they were completely contaminated with a pure culture of staphylococci. The physician who treated plaintiffs diagnosed their illness as food poisoning due to pre-formed staphylococcus toxin. The proof in the case was sufficient to justify a finding that plaintiffs had suffered from food poisoning due to the presence of the foreign organism in the crabmeat and that an outside poisonous substance which had been added to the crabmeat before the can had been sealed was the competent producing cause of plaintiffs' illness.

Amtorg Trading Corporation, one of the defendants, owned the trademark "Chatka," but as to it the complaint was dismissed at the close of the case. Plaintiffs have not appealed from such dismissal. The other defendants are the distributor, Vita Food Products, Inc., (hereafter referred to as "Vita Food") and the retailer, National Grocery Company, (hereafter referred to as "National Grocery").

The complaint contains three causes of action. The first is by all plaintiffs against defendants, for recovery of damages for personal injuries arising out of negligence. This cause of action is based not only upon common-law negligence but also upon the alleged breach of the statutory duty as imposed by three statutes: (1) The Agriculture and Markets Law of the State of New York, as amended (Cons. Laws, ch. 69); (2) the New Jersey Food, Drug and Cosmetics Law and (3) the Federal Food

and Drugs Act of June 30, 1906, as amended. The second cause of action is by plaintiff John Hopkins against all defendants for loss of services of his wife and two minor sons and for medical expenses. It likewise proceeds upon the theory of common-law negligence and also for violation of the three aforementioned statutes. The third is by plaintiff John Hopkins against defendant National Grocery alone and is for recovery of damages for personal injuries based upon a breach of an alleged implied warranty that the crabmeat was fit for human consumption.

The "Chatka" crabmeat which caused the food poisoning had been bought by defendant National Grocery from defendant Vita Food. There was proof that Vita Food had a contract with a Russian food company for the purchase of this food product. Save for the bare fact that it had been bought from Vita Food, there was no proof as to how the can in question came into possession of defendant National Grocery.

From a judgment entered upon a jury's verdict in favor of all plaintiffs this appeal is taken.

We are of the view that upon all the evidence adduced plaintiffs failed to establish a cause of action either at common law or under any one of the three statutes set forth.

As the transaction out of which these causes of action arise, occurred entirely in the State of New Jersey, the law of the place where the tort was committed must govern. It is well settled that a negligence action being one in tort, if no cause of action is created at the place of the wrong, no recovery in tort can be had in any other State on account of the wrong. (Restatement, Conflict of Laws, § 384, subd. 2; *Fitzpatrick* v. *International R. Co.*, 252 N. Y. 127; *Salimoff & Co.* v. *Standard Oil Co.*, 262 N. Y. 220, 226.) The rule applies although in the State where the action is brought a cause of action would have been created under the circumstances either by common law or by statute. (Restatement, Conflict of Laws, § 384, Comment b.) Where, as here, one relies upon a foreign statute as the foundation of a cause of action, he must not only plead and prove the statute, but he must also prove how the statute has been construed by the courts of the State in which it was enacted. The laws of other States are facts which must be alleged and proved and of which the courts of this State may not take judicial notice either in their language or their interpretation (*Southworth* v. *Morgan*, 205 N. Y. 293, 296; *Angell* v. *Van Schaick*, 132 N. Y. 187), and it is not presumed that the enactments of another jurisdiction are the same as those of New York (*International*

*Text Book Co.* v. *Connelly,* 206 N. Y. 189, 200). Without proof on the subject, the common law of a sister State is presumed to be the same as in this State.

The complaint charges that defendants violated the Food, Drug and Cosmetics Law of the State of New Jersey. That statute, first enacted in 1907, is a penal statute and provides as follows: "No person shall distribute or sell, or manufacture for distribution or sale, or have in his possession with intent to distribute or sell, any food, drug * * * which under any of the provisions of this act is * * * adulterated or misbranded." (C. S. p. 2564, § 1.)

"For the purposes of this act an article shall be deemed to be adulterated: * * *

"Fifth. If it contain any added poisonous or other added deleterious ingredient which may render such article injurious to health; * * *

"Sixth. If it consists in whole or in part of a filthy, decomposed or putrid animal or vegetable substance, or any portion of an animal unfit for food, whether manufactured or not, or if it is the product of a diseased animal or one that had died otherwise than by slaughter." (C. S. p. 2564, § 3.)

"Penalties. Any person who shall violate any provision of this subtitle, or any rule or regulation of the state department made pursuant thereto, or who shall refuse to comply with any lawful order or direction of the department, shall be liable to the following penalties, unless otherwise specifically provided:

"a. For each first offense a penalty of fifty dollars;

"b. For each second offense a penalty of one hundred dollars;

"c. For each third and every subsequent offense a penalty of two hundred dollars." (N. J. S. A. tit. 24, chap. 17, § 1.)

A New York pure food statute (Agriculture and Markets Law, former §§ 198, 199) and the New Jersey statute were passed subsequent to the enactment of the Federal statute (Federal Food and Drugs Act of June 30, 1906, U. S. Code tit. 21, ch. 1 [now ch. 9]) and all are similar in wording.

Though the New Jersey statute was received in evidence without objection, there was no proof as to how that statute has been construed and interpreted by the courts of that State. Appellants argue that the New Jersey courts have held that the violation of a public statute by one person resulting in injury to another does not create civil liability in the absence of a specific statutory provision granting such remedy. This would appear to be the New Jersey rule where, as here, the offenders are not manufacturers, but are a distributor and a retailer

(*Evers* v. *Davis*, 86 N. J. L. 196; *Lipari* v. *National Grocery Co.*, 120 N. J. L. 97; *Cornelius* v. *B. Filippone & Co., Inc.*, 119 N. J. L. 540.)  In the State of New York, when a statute imposes a duty, any person having a special interest in the performance thereof may sue for a breach which caused him damage. (*Abounader* v. *Strohmeyer & Arpe Co.*, 243 N. Y. 458; *Willy* v. *Mulledy*, 78 N. Y. 310; *Amberg* v. *Kinley*, 214 N. Y. 531.)  That, however, does not seem to be the New Jersey rule.  Having failed to prove that the interpretation of the New Jersey statute by the courts of that jurisdiction would support a recovery in that State, plaintiffs cannot succeed here.

With respect to the alleged violation of the New York statute plaintiffs did not establish that any transaction occurred in this jurisdiction.  There was no proof that our statute had any application to the facts.  No sale to any one of the plaintiffs was shown to have been made in New York nor is there any proof of a purchase or sale by any of the defendants in this State or that any transaction was ever had with regard to a New York law.

As to the Federal statute, there was likewise a failure to show that it had any bearing upon the facts.  The sale by National Grocery involved nothing more than the transfer of a can of crabmeat within the State of New Jersey.  There is no evidence as to when or where the sale of Vita Food to National Grocery was consummated nor is there any fact from which it may be inferred that the Federal statute applied to such a sale.  Whether the New Jersey courts would recognize a civil cause of action for a violation of a Federal statute, such as that pleaded here, even though they might not uphold such a cause of action under their own State statutes, may be determined upon a trial, if there be proof that interstate commerce was involved in connection with the sale of this can of crabmeat.  Both the New Jersey statute and the Federal statute provide penalties for violations and, as we have already noted, there are authorities in New Jersey which indicate that such penalties are exclusive and do not give rise to a civil action to one injured by a breach of such statute.

The deficiency of proof with respect to foreign law may not, under the circumstances, be supplied under the provisions of section 391 of the Civil Practice Act.  That statute has application not where there is a failure of proof but to a situation where a party has produced some evidence.  In such case the court may supply the additional evidence.  (*Cherwien* v. *Geiter*, 272 N. Y. 165, 168.)

We have already called attention to the established principle of law that in the absence of allegations and proof of the law of another state it must be assumed that the common law governs, which is deemed to be the same as is administered in this State. (*International Text Book Co.* v. *Connelly, supra,* at p. 200; 3 Carmody's New York Practice, p. 1778.) At this trial there was insufficient proof as to the common law in the State of New Jersey; hence the common law of this State must govern. In New York the rule under the common law is that no liability is imposed upon a seller or a distributor of canned foods either because of negligence or for implied breach of warranty in the absence of proof of knowledge with respect to the contents of the sealed container. (*Foley* v. *Liggett & Myers Tobacco Co., Inc.,* 136 Misc. 468, 474; *Aronowitz* v. *Woolworth Co.,* 134 Misc. 272; *Julian* v. *Laubenberger,* 16 Misc. 646; *Cotton* v. *Reed,* 25 Misc. 380, 382; 90 A.L.R. 1270.)

Plaintiffs failed to prove any common-law negligence and omitted to prove the construction of the New Jersey statute by the courts of that State. Neither the New York statute nor the Federal statute was shown to have any application to the facts. Accordingly, plaintiffs did not establish a case under their first or second cause of action.

The transaction on which the third cause of action is based occurred in the State of New Jersey. Without pleadings setting up either the New Jersey statute or the common law of New Jersey, its legal effect must be determined according to the common law of New York. Under the common law of New York there is no implied warranty that food in a sealed container sold by a retailer to a consumer is fit for human consumption when there is no proof of knowledge of its contaminated contents. As plaintiffs suggest, under the law of New Jersey a recovery may be had against a manufacturer of food for negligence where a deleterious substance is found in a product (*Cassini* v. *Curtis Candy Co.,* 113 N. J. L. 91; *Taylor* v. *Berner,* 106 N. J. L. 469; *DeGroat* v. *Ward Baking Co.,* 102 N. J. L. 188, 190) or against one, such as a restaurant keeper, who has prepared and served food to a customer (*Corin* v. *S. S. Kresge Co.,* 110 N. J. L. 378), but those cases are not pertinent to the facts here.

Though the complaint alleges that plaintiff John Hopkins by his son Richard, as agent, purchased the can of crabmeat, there was no evidence that the father had knowledge of the purchase or that he participated therein. Richard, according to the testimony, acted as agent for his mother. In *Gimenez* v. *Great*

*Atlantic & Pacific T. Co.* (264 N. Y. 390) it was held that a wife who purchased a can of crabmeat and ate a portion thereof which made her ill, was the principal rather than the husband; that she could maintain the action for breach of warranty under section 96 of the Personal Property Law (Cons. Laws, ch. 41) and that the husband could not. The father, therefore, neither under the common law nor under the statute, would have a right of action based upon implied warranty since there was no privity of contract between him and the defendant, National Grocery. In New York the law is settled that there is no implied warranty of fitness for human consumption except as to the buyer (*Bourcheix* v. *Willow Brook Dairy, Inc.*, 268 N. Y. 1, 4; *Chysky* v. *Drake Brothers Co.*, 235 N. Y. 468); similarly as to implied warranty of merchantability. (*Ryan* v. *Progressive Grocery Stores*, 255 N. Y. 388. But see *Stave* v. *Giant Food Arcade*, 125 N. J. L. 512.) John Hopkins may perhaps be in a position to show that the son acted simply as his agent in making the purchase and that the cause of action in contract accrued to the father. (*Ryan* v. *Progressive Grocery Stores, supra.*) Such proof does not appear in the record before us.

Upon a retrial plaintiffs may be afforded an opportunity to amend their pleadings with respect to the allegations of statutory law and the common law and they may be able to supply the deficiencies of proof to which reference has heretofore been made. Plaintiffs here did not prove any one of the causes of action alleged in the complaint.

For all of the foregoing reasons the judgment should be reversed and a new trial ordered, with costs to the appellants to abide the event.

MARTIN, P. J., GLENNON and CALLAHAN, JJ., concur; DORE, J., concurs in result.

Judgment unanimously reversed and a new trial ordered with costs to the appellants to abide the event.