[783 NYS2d 355]

Gerel Corp. et al., Respondents, v Prime Eastside Holdings, LLC, et al., Appellants.

First Department, October 19, 2004

## APPEARANCES OF COUNSEL

*Rivkin Radler LLP*, Uniondale (*Cheryl F. Korman* and *Evan H. Krinick* of counsel), for appellants.

*Stroock & Stroock & Lavan LLP*, New York City (*Kevin L. Smith* of counsel), for respondents.

## OPINION OF THE COURT

SULLIVAN, J.

This appeal presents the issue of whether plaintiffs, the successor landlords to which the three subject properties had been surrendered when defendants, the net lessees, defaulted on their lease obligations, have a private right of action under General Obligations Law § 7-105 to recover the tenants' security deposits.

On June 19, 2001, defendant Prime Eastside Holdings, LLC entered into 50-year net leases with plaintiffs Gerel Corp., Ruradan Corp. and Timston Corp. for three mixed-use properties located in Manhattan, known as 1100 Madison Avenue, 6-10 East 48th Street and 250 East 39th Street, respectively. Defendant Arthur Green is the principal of Prime.[1] Under the three separate leases, Prime was obligated to pay monthly rent of $266,000 for 1100 Madison Avenue, $152,000 for 250 East 39th Street and $57,000 for 6-10 East 48th Street. Prime provided letters of credit, which it was required to replenish, to secure the rent obligations for a three-month period under each of the leases.

At the time of the signing of the leases, plaintiffs claim, they turned over the security deposits of the tenants to Prime, which, on or about July 1, 2001, had entered into possession of the subject properties pursuant to the terms of the net leases, had taken over their operation and had begun collecting rents and collecting and holding tenant security deposits. Prime subsequently defaulted on the monthly rental payments for June, July and August 2002, causing plaintiffs to draw on the letters of credit. In violation of the lease agreements, Prime thereafter failed to replenish the letters of credit, allowing them to drop to

---

**1.** General Obligations Law § 7-105 expressly applies to "officers or agents" of owners or lessees who receive security deposits from tenants.

a zero balance, which resulted in a material breach of the leases. Prime also failed to pay the September 2002 base rent for all three properties, plus interest and late charges.

Based on its defaults and failure to pay the September 2002 rent, Prime surrendered possession and control of all three properties, effective October 1, 2002, as part of which it delivered some but not all of the rent security in its possession. As to the deposits not turned over, Prime claimed a right of offset against monies it alleged were owed it by plaintiffs as a result of its having allegedly prepaid real estate taxes and water and sewer charges. Prime allegedly held $112,719.09 in security deposits for 6-10 East 48th Street (Ruradan), of which only $29,405.41 has been turned over, $416,339.61 for 1100 Madison Avenue (Gerel), of which only $193,355.15 has been turned over and $242,023.78 for 250 East 39th Street (Timston), of which only $70,355.75 has been turned over. Prime freely admits having used the tenant security deposits to "adjust" for certain prepayments.

Plaintiffs thereafter, on or about October 29, 2002, commenced this action, seeking relief in three causes of action. In their first cause of action, they seek to recover for the unpaid September 2002 rent under the three leases, plus a 4% late charge with interest. In a second cause of action, they seek the return of that portion of the security deposits that has not been delivered to them. In their third cause of action, they seek attorneys' fees and costs pursuant to paragraph 21 of each of the lease agreements.

Prime and Green answered, interposing a general denial and three counterclaims, the first and second alleging, respectively, that plaintiffs had themselves failed to segregate and turn over to Prime the security deposits in violation of General Obligations Law § 7-105 when the properties were net leased and that plaintiff Gerel (1100 Madison Avenue) had made misrepresentations, specifically, that it had overstated its rent roll and understated real estate tax obligations, which caused them to be damaged. They made a similar allegation against Ruradan (6-10 East 48th Street) in the third counterclaim. Plaintiffs replied, setting forth various affirmative defenses.

Plaintiffs thereafter moved for summary judgment on their second cause of action, seeking the return of the withheld tenant security deposits, and the striking of the affirmative defenses and counterclaims. In a supporting affidavit, an officer and principal of the three plaintiff corporations, Ralph Elyachar,

explained that Prime, on surrendering the properties to plaintiffs, failed to turn over a substantial portion of the security deposits, having unilaterally made deductions from these deposits, in violation of General Obligations Law § 7-105.

Prime and Green cross-moved for summary judgment dismissing the second cause of action and the claims against Green in his individual capacity, arguing in counsel's affirmation that plaintiffs lacked standing to assert a violation of General Obligations Law § 7-105 and that the statute provides a criminal penalty and does not afford a private right of action. Neither Prime nor Green disputed the amount of the security deposits that had not been turned over. Instead, defendant Green in his affidavit argued that Prime was within its rights to offset the amount of security deposits due to plaintiffs by the amount owed Prime for such items as prepaid taxes. Supreme Court granted plaintiffs summary judgment on the second cause of action, from which this appeal is taken, ruling that General Obligations Law § 7-105 provides plaintiffs with a civil remedy to recover the security deposits. We agree and affirm.

General Obligations Law § 7-105 provides as follows:

> "1. Any person, firm or corporation and the employers, officers or agents thereof, whether the owner or lessee of the property leased, who or which has or hereafter shall have received from a tenant or licensee a sum of money or any other thing of value as a deposit or advance of rental as security for the full performance by such tenant or licensee of the terms of his lease or license agreement, or who or which has or shall have received the same from a former owner or lessee, shall, upon conveying such property or assigning his or its lease to another . . . at the time of the delivery of the deed or instrument or assignment or within five days thereafter . . . deal with the security deposit as follows:

> "Turn over to his or its grantee or assignee . . . the sum so deposited, and notify the tenant or licensee by registered or certified mail of such turning over and the name and address of such grantee, assignee, purchaser or receiver.

> "2. Any owner or lessee turning over to his or its grantee, assignee . . . the amount of such security deposit is hereby relieved of and from liability to the

tenant or licensee for the repayment thereof; and the transferee of such security deposit is hereby made responsible for the return thereof to the tenant or licensee, unless he or it shall thereafter and before the expiration of the term of the tenant's lease or licensee's agreement, transfer such security deposit to another, pursuant to subdivision one hereof and give the requisite notice in connection therewith as provided thereby . . .

"3. Any failure to comply with this section is a misdemeanor."

Thus, in accordance with General Obligations Law § 7-105, security deposits must be turned over to a purchaser of the premises or assignee of the lease.

General Obligations Law § 7-109 provides, "If it appears to the attorney general that any person, association, or corporation has violated or is violating any of the provisions of title one of this article, an action or proceeding may be instituted by the attorney general in the name of the people of the state of New York to compel compliance with such provisions and enjoin any violation or threatened violation thereof." Thus, the Attorney General is specifically empowered to bring an action to compel compliance with the statute (*State of New York v Wolowitz*, 96 AD2d 47, 71 [1983]).

It goes without saying that not every violation of a statutory provision is actionable by a person aggrieved by the breach. Before such an action may be brought, an express or implied private right of action must be conferred on an aggrieved party (*see Carrier v Salvation Army*, 88 NY2d 298 [1996]). Thus, General Obligations Law § 7-105 must be examined to ascertain whether it creates a private right of action, explicitly or implicitly, or limits the right of enforcement to the Attorney General. Plaintiffs may seek relief "only if a legislative intent to create such a right of action is 'fairly implied' in the statutory provisions and their legislative history" (*Hoxie's Painting Co. v Cato-Meridian Cent. School Dist.*, 76 NY2d 207, 211 [1990]; *see also Carrier* at 302). The Court of Appeals has propounded a three-pronged test to determine whether a statute confers a private right of action: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme" (*Sheehy v Big Flats Community Day*, 73 NY2d 629, 633 [1989]).

On its face, General Obligations Law § 7-105, in providing that upon conveying or assigning leased property, the owner or lessee shall "[t]urn over to [the] grantee or assignee" the tenants' security deposits, protects successors in interest to those owners or lessees who have received such deposits but fail to turn them over. Thus, plaintiffs, as the net lessee/landlord's successors, are protected by the statute. Furthermore, examination of the statute's legislative history reveals that, as successor landlords, plaintiffs are part of the class of individuals the statute was designed to protect. The Bill Jacket (L 1960, ch 513) addressing Real Property Law § 233, a precursor to General Obligations Law § 7-105, contains a supporting letter from the Commissioner of the Temporary State Housing Rent Commission stating that "[t]his bill extends the provisions of law applicable to deposits for use or rental of real property to deposits under a license agreement for the use or rental of real property as security for the performance of the agreement." Such security is afforded to the landlord, the entity holding the deposit.

The memorandum from the Attorney General to the Governor in the Bill Jacket (L 1974, ch 209) in support of the amendment to General Obligations Law § 7-105, which closely resembles the current section, states, "This bill will not only do away with the 'vanishing landlord' who upon selling the property, retains the rent security deposits and drops out of sight, requiring a long tedious search to obtain his whereabouts and force him to disgorge, but will also continue the long recognized relationship of landlord and tenant under which the tenant has placed his rent security deposit with his present landlord, to insure the faithful performance of all the provisions of his lease and tenancy, with his right to receive the return thereof upon termination of occupancy." In the same Bill Jacket, another memorandum to the Governor from the Committee on Housing and Urban Development of the Community Service Society of New York in support of the statute states, "The current provisions, by permitting a former landlord to retain the security deposit, deprive both the tenant and a new owner or lessee of the protection that this section is intended to ensure: the tenant has no assurance that his deposit will be repaid, and the new landlord has no access to the monies in case the tenant defaults. The proposed amendment is therefore needed to make the law fulfill its purpose."

Decisional law also supports the proposition that the statute was designed to protect the landlord's successor in interest in

the property in the event of a tenant's default (*see e.g. Glass v Janbach Props., Inc.*, 73 AD2d 106, 108-109 [1980] ["A landlord requires [a security] deposit, although still the property of the tenant, to attain the status of a protected creditor should the tenant breach the lease. It is in anticipation of just such a situation as the one presented here that the landlord assures himself of adequate protection should the finances of a tenant falter"]; *Matter of Atlas*, 217 App Div 38, 41 [1926] ["the sum was paid to the lessors as a fund continuing to belong to the lessee, but intrusted to the lessors to hold as security against defaults of the lessee in accordance with the terms of the lease, and finally, if not previously required to make good defaults of the lessee, to be applied in payment of the rent for the last months of the term"]).

Thus, when Prime transferred the subject properties back without turning over the security deposits, it denied plaintiffs the protection the funds were designed to secure pursuant to General Obligations Law § 7-105. As successor landlords, plaintiffs are within the class of individuals the statute was designed to protect. This conclusion is reinforced by the Legislature's effort to prevent landlords no longer in control of properties from unlawfully retaining tenants' security deposits and insuring that tenants will be able conveniently to obtain the return of their deposits from the current landlords of the properties in which they reside. To enable successor landlords to act as a trustee with regard to these deposits, they must be provided with a remedy to secure the return of these deposits from those outgoing landlords who refuse to turn them over.

Furthermore, as examination of the legislative history and purpose shows, General Obligations Law § 7-105 was designed to prevent a landlord's financial loss in the event of a tenant default. Since the unlawful retention of these deposits is the type of conduct that General Obligations Law § 7-105 was intended to prevent and constitutes a clear violation of the statute, providing successor landlords with a private right of action to pursue their statutory right to the receipt of tenant security deposits from prior landlords promotes the legislative goal.

Moreover, since such a private right of action is not incompatible with the enforcement mechanism chosen by the Legislature, it is consistent with the legislative scheme (*see generally Uhr v East Greenbush Cent. School Dist.*, 94 NY2d 32, 40 [1999]; *Sheehy v Big Flats Community Day*, 73 NY2d 629 [1989], *supra*).

That the Attorney General has standing to institute an action under General Obligations Law § 7-105 for a violation does not,

in and of itself, defeat the existence of a private right of action. Indeed, in another context the right of the Attorney General to enforce a statute and the right of an individual aggrieved to bring a private action have been found to coexist (*see e.g. Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314 [2002]). In this regard, the Legislature could not have intended that the Attorney General be involved in every landlord/tenant security dispute throughout the state; nor could it have intended that the Attorney General monitor the transfer of security deposits from one landlord to another. Were that the case, the budget and staff of that office would be so burdened as to nullify the legislative scheme, ultimately resulting in the loss by successor landlords and tenants of security deposits in the hands of former landlords.

Pointing to the penal nature of the statute's origins (L 1924, ch 625), making it a misdemeanor for a landlord, who, upon the sale or transfer of the property, fails to turn over security or rent deposits (former Penal Law § 1302-a),[2] defendants argue that the tenants, not successor landlords, comprise the class for whose benefit General Obligations Law § 7-105 was intended. Of course, a provision for criminal penalties does not necessarily mean that criminal penalties are the exclusive consequence of a statutory violation (*see e.g. Izzo v Manhattan Med. Group, P.C.*, 164 AD2d 13, 16 [1990], *lv dismissed* 77 NY2d 989 [1991]). Nor does it follow that because a tenant is an intended beneficiary of a statute a successor landlord cannot similarly be an intended beneficiary. As this Court has stated, "[W]hen a statute imposes a duty, any person having a special interest in the performance thereof may sue for a breach which caused him damage" (*Hopkins v Amtorg Trading Corp.*, 265 App Div 278, 283 [1942]).

Defendants argue, alternatively, that even if a private right of action exists under the statute, plaintiffs still lack standing since ownership of the security deposits at all times remains with the tenants who advanced the deposits. The specific language of General Obligations Law § 7-105 makes it clear, however, that grantees, assignees, successors and receivers all have the same rights with respect to the transfer of security deposits, including standing to compel such transfer (*see Tischler v Key One Corp.*, 67 AD2d 886 [1979]). As successor

---

**2.** In 1965 the Penal Law was revised and the provisions related to the retention of tenant security deposits were placed in General Obligations Law § 7-105 (L 1965, ch 1031, § 102).

landlords, plaintiffs were directly injured by defendants' refusal to turn over the tenants' security deposits and have standing to enforce their rights under General Obligations Law § 7-105.

Moreover, as trustees of the tenants' security deposits, plaintiffs also have standing to assert defendants' violation of General Obligations Law § 7-105. By statute, tenants' security deposits are trust funds. General Obligations Law § 7-103 (1) provides:

> "Whenever money shall be deposited or advanced on a contract or license agreement for the use or rental of real property as security for performance of the contract or agreement or to be applied to payments upon such contract . . . , such money, with interest accruing thereon, if any, until repaid or so applied, shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made and shall not be mingled with the personal moneys or become an asset of the person receiving the same, but may be disposed of as provided in section 7-105 of this chapter."

This trust provision operates to protect the tenant against the landlord's misappropriation of the funds deposited (*In re Pal-Playwell, Inc.*, 334 F2d 389, 391 [2d Cir 1964] [applying Real Property Law § 233]). These security funds remain the property of the tenants who deposited them (*Glass v Janbach Props.*, 73 AD2d at 108). Without question, the tenants themselves have standing to sue for a violation of General Obligations Law § 7-105 (*see Mogol v Kramer*, 98 Misc 2d 1023 [1979]; *LeRoy v Sayers*, 217 AD2d 63 [1995]). That being so, plaintiffs, as statutory trustees of their tenants' security deposits, have standing to sue on behalf of the tenant beneficiaries (*see e.g. Globe Indem. Co. v Atlantic Lighterage Corp.*, 244 App Div 97 [1935], *affd* 271 NY 234 [1936]).

Not only do plaintiffs have standing to sue defendants on behalf of the tenants to recover the security deposits but they have a fiduciary duty to do so (*see Matter of Hunter*, 194 Misc 2d 364, 368 [2002], *mod on other grounds* 6 AD3d 117 [2004]). In turning back the three properties involved, defendants unlawfully retained a substantial portion of the tenants' security funds, thereby converting trust funds. As trustees, plaintiffs

have the obligation to act for the tenant beneficiaries and seek the return of these funds.[3]

We have considered defendants' other arguments and find that they are without merit.

Accordingly, the judgment of the Supreme Court, New York County (Karla Moskowitz, J.), entered October 24, 2003, which, upon the grant of plaintiffs' motion for partial summary judgment on the second cause of action, awarded judgment in the amount of $222,983.01, plus interest, to plaintiff Gerel Corp., awarded judgment in the amount of $83,313.68, plus interest, to plaintiff Ruradan Corp. and awarded $171,688.03, plus interest, to plaintiff Timston Corp., should be affirmed, with costs and disbursements.

SAXE, J.P., WILLIAMS, FRIEDMAN and MARLOW, JJ., concur.

Judgment, Supreme Court, New York County, entered October 24, 2003, affirmed, with costs and disbursements.

---

3. As trustees of a statutorily created trust, plaintiffs need not sue in their representative capacities (*see Banca Commerciale Italiana Trust Co. v Clarkson,* 274 NY 69 [1937]; *Haag v Turney,* 240 App Div 149 [1934]).