OPINION OF THE COURT
Thomas F. Whelan, J.
It is ordered that the branch of the motion (No. 003) by defendant for dismissal of the first, second, third, fourth, fifth, and sixth causes of action in plaintiffs third amended verified complaint is denied; and it is further ordered that the branch of the motion by defendant for an award of sanctions against plaintiff is denied; and it is further ordered that the branch of the cross motion (No. 004) by plaintiff for summary judgment on the fourth, fifth, sixth, seventh, eighth, ninth, twelfth, thirteenth, and fourteenth causes of action is denied; and it is further ordered that the branch of the cross motion by plaintiff for an award of sanctions against defendant and his counsel is granted to the extent indicated.
Plaintiff commenced this action seeking a judgment for reimbursement of rental payments, security deposit, late fees, and other expenses incurred regarding a lease she entered into with defendant landlord, Richard Torrenzano, for premises he owns located at 12 Right of Way, Sag Harbor, New York. The third amended complaint alleges violation of Code of the Town of Southampton chapter 270; excessive and usurious late fees; breach of warranty of habitability; breach of contract; unjust enrichment; and also seeks an award of attorney fees. Defendant now moves for dismissal of the first, second, third, fourth, fifth, and sixth causes of action. In support of the motion defendant submits, among other things, his own affidavit, the lease and its extensions, and a rental permit dated September 22, 2014. Plaintiff opposes the motion and cross-moves for summary judgment and an award of sanctions. However, no answer has been served addressed to the third amended complaint, as defendant has moved to dismiss pursuant to CPLR 3211.
The initial lease dated October 30, 2010 called for annual rent in the amount of $35,000 from November 8, 2010 through November 7, 2011. The lease required a security deposit of $3,500 to be held in a segregated account, the landlord to make *945 all necessary repairs, and late fees of 5% of the amount of the past due rent. A lease extension continued the tenancy from November 8, 2011 through November 7, 2012. A new lease dated November 15, 2012, was executed for November 18, 2012 through November 17, 2013 increasing the annual rent to $36,000 and the security deposit to $6,000. Overdue rent required a penalty of $250 and a fee of $100 per week. That lease was extended for a term ending November 17, 2014. That extension, a copy of which was not provided by either party, required the $36,000 in rent to be paid in advance. It was paid on September 27, 2013, by check “without prejudice to the pending lawsuit.” On September 15, 2014, the tenant vacated the premises, with two months still remaining on the lease.
Plaintiff commenced this action in New York County in May of 2013. The action was transferred to Suffolk County by order dated July 15, 2013 (Mendez, J.S.C.). By prior order dated February 14, 2014, the then assigned Justice, Hon. Jerry Garguilo, dismissed one cause of action and plaintiff withdrew another cause of action. Subsequently, there was an amended complaint and then a second amended complaint. In August 2014, plaintiff learned that Southampton Town Code chapter 270 requires landlords to obtain a rental permit in order to legally rent property and collect rent in Southampton. Upon ascertaining that the landlord did not possess a permit, plaintiff assisted Southampton’s code enforcement department in charging her landlord. Plaintiff was granted leave from this court on August 13, 2014, by then assigned Justice Jerry Gargüilo, to amend her complaint to allege violations of chapter 270. Before the court is a third amended complaint, dated October 24, 2014, which is the subject of this motion. After the conference with Justice Garguilo, the landlord, apparently without the assistance of counsel, applied for and received a rental permit, dated September 22, 2014. In that application, Torrenzano failed to notify the Town of the pending litigation which included claims of violations of the warranty of habitability and he expressly stated, “I do not have any knowledge of complaints from tenants or others regarding any existing code, safety or health violations at the property which is the subject of this rental permit application.” At the very least, Torrenzano made a “mistake” in failing to notify the Town of Southampton of the pending litigation. It is noted that Torrenzano’s counsel notarized the rental permit application but denied representing or advising the landlord regarding the application.
*946 Defendant now moves for dismissal of the first through sixth causes of action which rely on Southampton Town Code chapter 270 and which seek reimbursement for rent paid for four years on premises without the benefit of a rental permit. Defendant relies on Liu v Adelbergs (2013 WL 6916379 [Sup Ct, NY County, Dec. 31, 2013, Madden J.]), for the proposition that the Southampton Code did not create a private cause of action, allowing plaintiffs to recoup rental payments.
Pursuant to CPLR 3211 (a) (7), pleadings shall be liberally construed, the facts as alleged accepted as true, and every possible favorable inference given to plaintiff (see Leon v Martinez, 84 NY2d 83 [1994]). On such a motion, the court is limited to examining the pleading to determine whether it states a cause of action (see Guggenheimer v Ginzburg, 43 NY2d 268 [1977]). In examining the sufficiency of the pleading, the court must accept the facts alleged therein as true and interpret them in the light most favorable to the plaintiff (see Pacific Carlton Dev. Corp. v 752 Pac., LLC, 62 AD3d 677 [2d Dept 2009]; Gjonlekaj v Sot, 308 AD2d 471 [2d Dept 2003]). On such a motion, the court’s sole inquiry is whether the facts alleged in the complaint fit within any cognizable legal theory, not whether there is evidentiary support for the complaint (see Leon v Martinez; International Oil Field Supply Servs. Corp. v Fadeyi, 35 AD3d 372 [2d Dept 2006]). A motion to dismiss will not be granted unless the moving papers conclusively establish that no cause of action exists (see Chan Ming v Chui Pak Hoi, 163 AD2d 268 [1st Dept 1990]). Finally, deficiencies in the complaint may be remedied by affidavits submitted by the plaintiff (see Amaro v Gani Realty Corp., 60 AD3d 491 [1st Dept 2009]).
In order to establish a prima facie case of a violation of the Southampton Town Code chapter 270, plaintiff must demonstrate that the Code creates an express or implied private right of action. The Town adopted the code provision since it had “determined that there exists in the Town of Southampton serious conditions arising from the rental of non-owner occupied residential dwelling units” (see Resolution 2007-1184 § 1 [adopting Local Law No. 40 (2007) of Town of Southampton and creating chapter 270]). Pursuant to section 270-2, the local law applies to all rental properties within the unincorporated area of the Town. Section 270-3 (A) states that “[e]ffective January 1, 2008, no owner shall cause, permit or allow the occupancy or use of a dwelling unit as a rental property without *947 a valid rental permit.” Section 270-3 (B) states that “[e]ffective January 1, 2008, no person shall occupy or otherwise use a dwelling unit as a rental property without a valid rental permit being issued for the dwelling unit.” However, the local law makes clear that rental permits will only be issued to, and may only be applied for and renewed by, the owner (see §§ 270-3 [C]; 270-4, 270-5). Additionally, all fees must be paid by the owner (see § 270-8). Importantly, section 270-13 specifically provides that a valid rental permit shall be a condition precedent to the collection of rent. A violation of the local law by the owner and/or the tenant is deemed to be a misdemeanor (see § 270-19 [A]) and aside from certain monetary or imprisonment penalties, an alternative fine “not exceeding double the amount of the rent collected over the term of the occupancy” is set forth (see § 270-19 [B], amended by Local Law No. 12 [2013] of Town of Southampton). The violation may be dismissed by a court upon a showing of cooperation and assistance in an investigation or prosecution or the prompt pursuance of one’s rights under the lease to remedy the violation (see § 270-19 [C]). Finally, aside from the criminal penalties, the local law authorizes the Town Attorney to bring a civil injunction proceeding, in the name of the Town, in Supreme Court, when directed to do so by the Town Board (see § 270-19 [D]).
“It goes without saying that not every violation of a statutory provision is actionable by a person aggrieved by the breach” (Gerel Corp. v Prime Eastside Holdings, LLC, 12 AD3d 86, 90 [1st Dept 2004]). The court in Liu v Adelbergs found that chapter 270 was not intended to create a private cause of action to enable plaintiffs to recoup rental payments. However, the plain language of the regulation requires the existence of a valid rental permit as a condition precedent to the collection of rent. Where, as here, the local law “does not explicitly provide for a private cause of action, recovery may be had under the statute only if a legislative intent to create such a right of action is ‘fairly implied’ in the statutory provisions and their legislative history” (Brian Hoxie’s Painting Co. v Cato-Meridian Cent. School Dist., 76 NY2d 207, 211 [1990], citing Sheehy v Big Flats Community Day, 73 NY2d 629, 633 [1989]).[1] Contrary to defendant’s position and the reasoning in Liu v Adelbergs, it is determined that the Southampton Town Code creates an implied private right of action.
*948 Pursuant to Sheehy v Big Flats Community Day (73 NY2d 629, 633 [1989], supra), the Court of Appeals sets forth the three factors this court must consider in determining whether an implied private right of action exists: whether the plaintiff is one of the class for whose particular benefit the statute was enacted; whether recognition of a private right of action would promote the legislative purpose; and whether creation of such a right would be consistent with the legislative scheme.
Applying that test here, it is concluded that the plaintiff, as a tenant or “occupant,” is a party the Town intended to benefit in enacting the ordinance. Specifically, “[t]he Town Board recognizes that the renting and occupancy of such dwelling units pose a serious threat to the health, safety and welfare of the occupants and the neighbors” (see Resolution 2007-1184 § 1 [emphasis added] [adopting Local Law No. 40 (2007) of Town of Southampton and creating chapter 270]). While the holding in Liu v Adelbergs focused on the issue of overcrowding, the Town Code also seeks to address the “violation of various State and Town laws” and rental properties that are “substandard” (see id.). Moreover, the Town Board enacted the Local Law “in order to protect the health, safety and welfare of its residents” (see id. § 4). It is clear that plaintiff is part of the class which the Town Code was intended to benefit.
As to the second Sheehy factor, a private right of action promotes the legislative purpose of preventing landlords from profiting from the rental of substandard or dangerous housing. The legislative purpose is promoted by holding landlords accountable by allowing tenants to commence civil actions to recover rents from unpermitted rental premises. As noted above, a rental permit is a condition precedent to the collection of rent, under the Town Code.
The third factor permits a finding of an implied private cause of action which is consistent with the legislative scheme. As noted in Sheehy (73 NY2d at 634-635), “a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme.” However, “[a] private right of action may at times further a legislative goal and coalesce smoothly with the existing statutory scheme” (Uhr v East Greenbush Cent. School Dist., 94 NY2d 32, 40 [1999]). This Sheehy factor, which is often noted to be the “most critical” (see Carrier v Salvation Army, 88 NY2d 298, 302 [1996]), is usually not fulfilled where there exists a *949 comprehensive legislative enforcement scheme to regulate an industry (see Brian Hoxie’s Painting Co. v Cato-Meridian Cent. School Dist., 76 NY2d at 212-213; Cruz v TD Bank, N.A., 22 NY3d 61 [2013]; Carrier v Salvation Army, 88 NY2d 298 [1996], supra; Sheehy v Big Flats Community Day, 73 NY2d at 634-636; Flagstar Bank, FSB v State of New York, 114 AD3d 138 [2d Dept 2013]; Signature Health Ctr., LLC v State of New York, 92 AD3d 11 [3d Dept 2011]; Rhodes v Herz, 84 AD3d 1 [1st Dept 2011]; Goldman v Simon Prop. Group, Inc., 58 AD3d 208 [2d Dept 2008]; Theodoreu v U.S. Cablevision Corp., 192 AD2d 847 [3d Dept 1993]).
Here, town officials are tasked with enforcing the law, but that is not dispositive (see Maimonides Med. Ctr. v First United Am. Life Ins. Co., 116 AD3d 207 [2d Dept 2014]). Particularly, in the Second Department, when a statute is not simply remedial in nature but is directed toward protecting the health and well-being of a particular class of individuals, a private right of action has been found to be fully consistent with the legislative enforcement scheme (see Maimonides Med. Ctr. v First United Am. Life Ins. Co., 116 AD3d 207 [2014], supra; AHA Sales, Inc. v Creative Bath Prods., Inc., 58 AD3d 6 [2d Dept 2008]; Maraia v Orange Regional Med. Ctr., 63 AD3d 1113 [2d Dept 2009]; Henry v Isaac, 214 AD2d 188 [2d Dept 1995]; see also Lino v City of New York, 101 AD3d 552 [1st Dept 2012]; Gerel Corp. v Prime Eastside Holdings, LLC, 12 AD3d 86 [1st Dept 2004], supra).
The Gerel Corp. holding is particularly instructive. As with the Attorney General in that case, here, the Town Board could not have intended that the Town Attorney be involved in every landlord/tenant rental agreement throughout the town. Where, as here (see Schwartz aff, Jan. 12, 2015, ¶ 27), it is alleged that the Town does not have sufficient resources to fully enforce the law, an implied private right has been upheld (see Gerel Corp., 12 AD3d at 93).
Here, the Town Code provision is directed toward protecting the health, safety, and well-being of a particular class of individuals, and is not primarily designed to provide a mechanism for preventing harm to the public in general (see Henry v Isaac, 214 AD2d 188, 193 [1995], supra). The fact that penalties for violations of the Town Code include possible fines “not exceeding double the amount of the rent collected over the term of the occupancy” (see § 270-19 [B], amended by Local Law No. 12 [2013]), demonstrates that the enactment was not intended as a general police regulation.
*950 Importantly, for purposes of this opinion, defendant’s motion is premised on the single claim that Town Code chapter 270 does not provide for an implied private right of action. This court holds that it does. Allowing a plaintiff to recoup rent paid, the actual sum to be determined on a case-by-case basis, would promote the legislative intent of the Town Board, that is, the attainment by a landlord of the mandatory rental permit.
At this early stage of the litigation, the court is unwilling, with the limited record before it, to address any alternative argument that the plaintiff is not entitled to recoup rent monies paid, despite the violation of the Town Code. Such an argument is centered on the claim of absence of actual injury. While it is true that the failure of a plaintiff to identify a cognizable injury may prove fatal to his or her claim, here, plaintiff has submitted affidavits and documentation supporting her allegations of damages. While the fact that the plaintiff had the use and enjoyment of the premises, under separate yearly lease agreements, may fall under the common-law understanding that one is not entitled to recoup monies already paid for work or services performed, particularly with regard to the first three rental periods, there are two or three classes of cases to which it will be necessary to refer in order to afford a clear understanding of the questions presented here.
The common-law voluntary payment doctrine, which bars recovery of payments made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law (see Dillon v U-A Columbia Cablevision of Westchester, 100 NY2d 525, 526 [2003]; Hedley’s, Inc. v Airwaves Global Logistics, LLC, 130 AD3d 872 [2d Dept 2015]), may have no application here, since plaintiff insists that she had no knowledge of the Town Code prohibition at issue.[2]
A second line of reasoning that may permit recovery is where a party has a claim in restitution for a performance rendered in return for a promise that is unenforceable on the grounds of public policy if he or she is not equally in the wrong with the promisor (see Smith v Pope, 72 AD2d 913 [4th Dept 1979]; Irwin v Curie, 171 NY 409 [1902]; Tracy v Talmage, 14 NY 162 [1856]; Nadoff v Club Central, 2003 NY Slip Op 51071[U] [Nassau Dist Ct 2003]; see also Restatement [Second] of Contracts *951 § 198 [1981]). The sentiment of Judge Wilde, in White v Franklin Bank (39 Mass [22 Pick] 181, 188 [1839]), upon the substituting of the word “landlord” in place of “bank,” is the best expression of the principal:
“To decide, that this action cannot be maintained, would be to secure to the defendants the fruits of an illegal transaction, and would operate as a temptation to all [landlords] to violate the statute, by taking advantage of the unwary, and of those who may have no actual knowledge of the existence of the prohibition of the statute, and who may deal with a [landlord] without any suspicion of the illegality of the transaction on the part of the [landlord].”
Defendant argues that analogous to the situation here is the situation where a landlord violated the Multiple Dwelling Law by failing to obtain a certificate of occupancy. However, Multiple Dwelling Law § 325 (2) expressly holds that where one voluntarily pays rent when one has a right to withhold same, “he shall not thereafter have any claim or cause of action to recover back the rent or installment of rent so paid.” Case law has sought to harmonize that provision with Multiple Dwelling Law § 302 (1) (b) (see Goho Equities v Weiss, 149 Misc 2d 628 [App Term, 1st Dept 1991]; Baer v Gotham Craftsman, 154 Misc 2d 490 [App Term, 1st Dept 1992]; Commercial Hotel v White, 194 Misc 2d 26 [App Term, 2d Dept 2002]). As such, the court finds this line of cases to be unpersuasive.
There is another class of cases which hold that a home improvement contractor who is unlicensed in the municipality where the work is performed is barred from recovery in contract or under any contractual or quasi-contractual theory (see Emergency Restoration Servs. Corp. v Corrado, 109 AD3d 576 [2d Dept 2013]; B & F Bldg. Corp. v Liebig, 76 NY2d 689 [1990]). Older case law examining licensing statutes that make it unlawful to carry on a trade or business without first obtaining a license have also noted that by reason of the illegality of the contract, the court should “leave the parties as they are” (Johnston v Dahlgren, 166 NY 354, 360 [1901]; Segrete v Zimmerman, 67 AD2d 999 [2d Dept 1979]), particularly where the licensing statute does not itself provide grounds for a party to recoup fees already paid (see Wildenstein v 5H&Co, Inc., 97 AD3d 488 [1st Dept 2012]). This notion of the illegality of the underlying contract and the refusal to aid a wrongdoer, as *952 expressed in Johnston v Dahlgren (166 NY 354 [1901], supra) and Schank v Schuchman (212 NY 352, 359 [1914]), has given way to the holding that a contract with the unlicensed home improvement contractor is unenforceable as opposed to rescinded (see B & F Bldg. Corp. v Liebig, 76 NY2d 689 [1990], supra; see also Restatement [Second] of Contracts § 181, Comment d, Illustration 5 [1981]).
Case law evolved to permit restitution for payments previously made for work that the unlicensed home improvement contractor failed to perform or for defective work (see O’Malley v Campione, 70 AD3d 595 [1st Dept 2010]; Goldstein v Gerbano, 158 AD2d 671 [2d Dept 1990]). Additionally, each licensing scheme must be closely examined. More recent case law holds that the licensing scheme for plumbers does not bar unlicensed plumbers from enforcing contract rights (see Matter of Migdal Plumbing & Heating Corp. [Dakar Devs.], 232 AD2d 62, 67 [1st Dept 1997] [“unless the licensing statute specifies such a draconian sanction”]; Turner v Parfumetics.Com, Inc., 35 Misc 3d 131 [A], 2012 NY Slip Op 50684[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]). Here, not only is the Town Code a licensing statute, it clearly provides that a valid rental permit shall be a condition precedent to the collection of rent.
When viewed in that light and after the examination of the Sheehy factors noted above, coupled with the fact this is not an unlicensed home improvement contractor case, it appears to the court that without the threat of recoupment of rent, aside from the possibility of administrative enforcement, there is no incentive for a landlord to obtain a license, which is an overriding concern of the Town.
Moreover, the plaintiff is not in pari delicto with defendant since plaintiff can rely upon the affirmative representation set forth in the various leases that defendant had “due power and authority” to rent the premises and, as noted above, the obligations regarding the application for, payment of, and renewal of the rental permit solely rests on the landlord (see generally Tracy v Talmage, 14 NY 162 [1856]). Here, plaintiff should have the opportunity to develop her claim predicated upon defendant’s alleged misrepresentation that he had “due power and authority” to rent the premises (see Allen v Miller, 1 Misc 2d 102 [App Term, 2d Dept 1955]). Case law surrounding General Obligations Law § 5-901 is similarly distinguishable, since the parties continued to knowingly and willingly accept *953 the benefit of the leased equipment without compensating the lessor (see Concourse Nursing Home v Axiom Funding Group, 279 AD2d 271 [1st Dept 2001]; Ludl Elecs. Prods. v Wells Fargo Fin. Leasing, 6 AD3d 397 [2d Dept 2004]; see also Ovitz v Bloomberg L.P., 77 AD3d 515 [1st Dept 2010]).
Defendant’s motion to dismiss must be decided by accepting plaintiff’s allegation as true that defendant failed to comply with the Town Code at issue (see Leon v Martinez, 84 NY2d 83, 87 [1994], supra). In view of that limitation, the motion to dismiss the first cause of action which seeks recoupment of rent paid in October of 2010; the second cause of action for recoupment of rent paid in November 2011; and the third cause of action for recoupment of rent paid in November of 2012 is denied, as it is determined that a private right of action under chapter 270 of the Town Code promotes the legislative goal and plaintiff’s claims are premised on a cognizable legal theory. The fourth cause of action also survives the motion to dismiss as rent was prepaid in full in November of 2013, “without prejudice to the pending lawsuit.” That stipulation alone may make that rent subject to recoupment. It is also undisputed that plaintiff vacated the premises on September 15, 2014, therefore the fourth cause of action survives because the October 2014, and November 2014 rent, although “paid” by plaintiff, may be subject to recoupment pursuant to Town Code chapter 270. Accordingly, defendant’s motion to dismiss the fourth cause of action is denied.
The fifth cause of action demands return of the security deposit. Defendant does not cite a legal ground for dismissal, arguing only that the condition of the property upon the landlord’s reentry was not acceptable. Defendant’s motion to dismiss the fifth cause of action is denied.
The sixth cause of action demands return of late fees denominated as additional rent under the November 2013 lease and additional rent pursuant to a five-day notice. Those fees may not be “collected” pursuant to chapter 270 of the Town Code, as they represent additional rent. Accordingly, the motion to dismiss the sixth cause of action is denied.
Defendant’s motion for an award of sanctions against plaintiff is denied. Under Southampton Town Code chapter 270, a plaintiff may recoup rent based upon the implied private right of action which precludes a landlord from “collection of rent.” Therefore, plaintiff’s legal arguments are not frivolous.
Rather, to the contrary, it is defendant, who has personally attacked plaintiff and her husband. In addition, defendant’s *954 counsel misrepresented to the court that he did not represent plaintiff in the initial lease negotiations. Defendant’s counsel now concedes via a surreply letter that it did represent defendant in the lease negotiations, despite Torrenzano’s affidavit that plaintiff’s allegations in this regard were an “outright fabrication.” It is noted that counsel’s correction occurred only after documentary proof of defendant’s “misstatement” and counsel’s subornation thereof was alleged.
Turning to plaintiff’s cross motion, summary judgment is requested on the fourth, fifth, sixth, seventh, eighth, ninth, twelfth, thirteenth and fourteenth causes of action. However, as noted above, defendant has yet to answer the third amended complaint. Accelerated judgments are provided for in article 32 of the CPLR. The remedy of summary judgment is available only after the joinder of issue (see CPLR 3212 [a]). It is thus not available against parties in default and the court is powerless to grant such a motion against such a party (see Gaskin v Harris, 98 AD3d 941 [2d Dept 2012]; Shaibani v Soraya, 71 AD3d 1121 [2d Dept 2010]).
Moreover, while this court could consider defendant’s motion to dismiss as one for summary judgment, upon proper notice (see CPLR 3211 [c]), the court declines to do so. The parties have not properly charted a course for summary judgment and, in any event, numerous issues of fact are present in the various submissions by the parties with regard to the causes of action which are the subject of the cross motion. For instance, with regard to the fourth cause of action, as factual issues in equity exist as to unclean hands, unjust enrichment on plaintiff’s behalf and whether defendant committed fraud or perjury in ultimately obtaining the permit, plaintiff has not established her entitlement to summary judgment as to that claim. Moreover, factual issues exist as to whether there was a waiver of the rental permit which preclude summary judgment for the period of time plaintiff resided at the property. The prepaid rent, for the period after plaintiff learned of the rental permit violation and vacated the premises is another matter. Arguments as to equity and waiver do not apply to this time period. In light of all of the above, the court denies the cross motion to the extent asserted against the defendant who has not yet appeared herein by answer, as the remedy of summary judgment is not available against a defendant in default of answering (see CPLR 3212 [b]).
The seventh cause of action seeks return of paid rent for the four year period of the lease under a theory of unjust enrich *955 ment on the basis that the landlord was in violation of the rental permit law. Factual issues, including plaintiff’s alleged waiver of the requirement, preclude summary judgment as to this cause of action.
The fifth and fourteenth causes of action demand return of plaintiff’s $6,000 security deposit. Issues of fact, including the condition of the premises, preclude summary judgment as to this cause of action.
The eighth cause of action demands return of not less than $400 in late fees on the basis they are punitive, a penalty, excessive, and usurious. Plaintiff has established that $350 was paid on January 11, 2013, as $250 plus $100 pursuant to the late fee provisions of the second lease. Plaintiff has also established that $1,150 was paid in January 2013 and $650 in February 2013 as “late penalty-paid under protest.” In opposition, defendant has established that payment was late in January and February of 2013. Factual issues exist which preclude summary judgment as to whether any late fees were due based upon expenses incurred by plaintiff and as to who was responsible for those expenses.
The ninth cause of action demands return of two months paid rent on the basis of constructive eviction for the landlord’s failure to obtain a rental permit and for failure to provide adequate heat in violation of the warranty of habitability. Thus, factual issues exist that preclude summary judgment as to this cause of action.
The sixth, twelfth, and thirteenth causes of action demand return of $997.63 paid “under protest.” These bills relate to repairs regarding the heating system and may only be charged to the tenant for “fault, neglect, misuse or abuse.” The best evidence of plaintiff’s lack of fault is found in defendant’s expert’s affidavit stating that after multiple visits to the home in January 2014, and March 2014, on May 10, 2014, a “dead spot” in the thermostat was located which may account for the heating system failure, rather than defendant’s counsel’s theory that the ambient temperature in the home “is attributable to the polar vortex, not the heating system.” Thus, issues of fact exist that preclude summary judgment as to each of these causes of action.
Plaintiff has demonstrated deceptive conduct by defendant in the collateral but related matter of his application to the Town of Southampton for a rental permit. His counsel, Irwin J. Cohen, Esq., a member of the Abramson law firm, maintains *956 that although he notarized the application, he did not advise defendant on the application or its contents. Moreover, plaintiff has demonstrated by documentary evidence that defendant falsely claimed to the court that he was without legal representation at the time of the initial lease. The statements may have been suborned by counsel, whose own records would have shown defendant’s affidavit to be false. Troubling is the affirmation of Adina T. Glass, an associate with the Abramson Law Group, who affirmed that she reviewed the accompanying reply affidavit of Richard Torrenzano, sworn to on February 24, 2015, and asserted that the statements “are true to the best of my knowledge,” when the law firm had to have been aware of their falsity.
In view of the foregoing, at the conclusion of the trial herein, Adina T. Glass and Irwin J. Cohen shall appear for a hearing pursuant to part 130 of the Rules of the Chief Administrator to show cause why sanctions should not be imposed for their alleged frivolous conduct (see Rules of Chief Admin of Cts [22 NYCRR] § 130-1.1 et seq.).

. No legislative history was provided to the court, aside from the local law which enacted the Town Code provisions (compare Rhodes v Herz, 84 AD3d 1, 10 [1st Dept 2011]).

. CPLR 3005 modifies the common-law rule by providing that “relief shall not be denied merely because the mistake is one of law rather than one of fact.”