STUART M. GLASS, as Assignee for the Benefit of Creditors of CLAUDIA COSTUMES, INC., Respondent, v JANBACH PROPERTIES, INC., Appellant.

Second Department, March 3, 1980

### APPEARANCES OF COUNSEL

*Maggin & Swan (Alfred J. Swan* of counsel), for appellant.

*Steven K. Meier* for respondent.

### OPINION OF THE COURT

O'CONNOR, J.

■ In this action by an assignee for the benefit of creditors against the landlord of a tenant-assignor that has breached its lease, the question presented is whether the landlord may retain the security deposit in its possession or whether it must return the deposit to the assignee and then file a claim for damages suffered as a result of the breach of the lease in the same manner as any other general creditor. We hold that absent the improper commingling of funds, the landlord has the right to retain the security deposit. Such result is dictated by statute, case law, and the very nature of the security deposit.

## I

Claudia Costumes, Inc., the tenant-assignor, defaulted under two leases with its landlord, Janbach Properties, Inc. An assignment for the benefit of creditors was made by Claudia on July 13, 1978, and the premises were subsequently surrendered by Stuart Glass, the assignee. Janbach, on August 30, 1978, filed a verified proof of claim with the assignee. The claim alleged that the landlord has suffered damages in excess of $10,000 as a result of the breach of the leases, and further indicated that two security deposits totaling $5,872 were being retained to be applied towards the damages.

When Glass sought a return of the security deposits, Janbach, refusing to be relegated to the same status as a general creditor, rejected the request. As a result Glass, on February 9, 1979, initiated an action for a return of the security. Service of the complaint was made on the Secretary of State

pursuant to section 306 of the Business Corporation Law. When no answer was interposed, a default judgment was entered on May 7, 1979. Janbach, on May 18, 1979, promptly initiated an application to vacate the default. Lenore Janis, president of Janbach, deposed that on May 10, 1979 a copy of the default judgment was received in the mail and this was the first time Janbach was made aware of the action. Subsequent investigation revealed that an outdated address had been listed with the Secretary of State, and that an inadvertent delay in filing the new address had prevented the complaint from being forwarded to the correct location. The complaint was returned to the Secretary of State by the postal authorities marked "Expired" and no effort was made to forward it to Janbach's actual address, which was listed on the face of the summons. Furthermore, Janbach had a meritorious defense. Accordingly, Ms. Janis argued, the default judgment should be vacated.

## II

Glass, the assignee of the tenant, took the position that Janbach, the landlord, held the security deposit in trust for the tenant, Claudia, and it was at all times Claudia's property. He further contended that when the tenant made the assignment for the benefit of creditors it was the landlord's obligation to turn over the security to the assignor and file a claim in the same manner as any other general creditor. Janbach argued that it was entitled to keep the security deposits as soon as the tenant breached the leases. Special Term agreed with the assignee and refused to vacate the default because Janbach lacked a meritorious defense, citing in support of its decision *Matter of Perfection Tech. Servs. Press (Cherno-Dalecar Realty Corp.)* (22 AD2d 352, affd 18 NY2d 644). Reargument was subsequently granted and Special Term adhered to its original decision. We now reverse.

## III

It is beyond cavil that a landlord holding a security deposit under a lease covering the rental of real property does so in the capacity of a trustee (General Obligations Law, § 7-103, subd 1). Such deposit remains the property of the tenant, and may not be mingled with the landlord's funds. These fundamental principles, however, should not serve to obscure the basic nature of a security deposit. A landlord requires such a

deposit, although still the property of the tenant, to attain the status of a protected creditor should the tenant breach the lease. It is in anticipation of just such a situation as the one presented here that the landlord assures himself of adequate protection should the finances of a tenant falter. To uphold the claim of the assignee here would be to nullify the established safeguards recognized by both case law and statute.

In *Matter of Perfection Tech. Servs. Press (supra,* p 355), this court stated: "It has been the policy of our courts, in considering questions arising under an assignment for the benefit of creditors, to be guided to some extent by the law and practice of the bankruptcy courts *(Matter of M.S. Ackerman, Inc. [Melniker],* 19 Misc 2d 260, 261)."

In this regard, the discussion of a situation very similar to the present one, in *Matter of Pal-Playwell, Inc.* (334 F2d 389), is highly instructive. As stated by the court (at p 391):

"Although section 233 [of the New York Real Property Law] states that the deposit shall not become an asset of the person (the landlord) receiving it and shall not be mingled with his personal moneys, the section does not abrogate the landlord's right to apply the fund whenever necessary to insure fulfillment of the lessee's contractual obligations. Despite the depositor's continued ownership, it is an ownership burdened by the landlord's right to hold and use the money when required to secure performance. Since the trustee could acquire no greater rights to the deposit than possessed by the lessee, he was not entitled to its return until the lessee had satisfied its obligations to the landlord. See *In re Sherwoods, Inc.,* 210 F. 754, 760 (2d Cir., 1913). * * *

"It is apparent that the statutory trust is aimed at the landlord who jeopardizes the lessee's eventual recovery of his deposit. That we are not dealing here with a trust in the conventional sense is made clear by the fact that the landlord may under the statute legitimately apply the deposit to damages he sustains due to the lessee's breach. Naturally, after the lessee has defaulted, no purpose is served by holding the funds in trust since the need to insure the availability of the deposit no longer exists.

"We do not believe that the trust established by section 233 is such as to require us to defeat the landlord's otherwise clear right to set-off the deposit under section 68a, *Oldden v Tonto Realty Corp.,* 143 F.2d 916 (2d Cir. 1944). A holding to the contrary would contradict the plain intentions of the

parties as well as undermine the purpose of the security arrangements and the applicable New York legislation."

The foregoing makes it clear that the landlord's rights pursuant to subdivision 1 of section 7-103 of the General Obligations Law, the successor to section 233 of the Real Property Law, have priority over the claims of general creditors. The statute, by its very terms, recognizes this: "Whenever money shall be deposited or advanced on a contract or license agreement for the use or rental of real property as security for performance of the contract or agreement * * * such money * * * *until repaid or so applied,* shall continue to be the money of the person making such deposit" (emphasis supplied).

Further, as was stated in *Matter of State of New York v Parker* (67 Misc 2d 36, 40, revd on other grounds 38 AD2d 542, affd 30 NY2d 964): It remains the property of tenant until there has been a default or breach of a covenant of the lease and at which time landlord may appropriate the deposit in accordance with the terms of the lease."

*Matter of Perfection Tech. Servs. Press* (22 AD2d 352, affd 18 NY2d 644, *supra),* relied upon by Special Term, is not to the contrary. It merely holds that a landlord who has improperly commingled the security deposit entrusted to him loses the right to retain the money as against an assignee for the benefit of creditors. Commingling entitles a tenant to an immediate return of the deposit because the landlord who has converted the funds forfeits his right to security. This case does not hold that a tenant retains his rights in the deposit, even after a breach, absent commingling. No commingling of funds is alleged against Janbach.

### IV

Janbach sought to vacate the default judgment shortly after its entry. A reasonable excuse for the default and a meritorious defense have been proffered (see *Commissioners of State Ins. Fund v Atlantic Sandblasting Serv.,* 58 AD2d 751). In light of the strong policy favoring a resolution of disputes on their merits, it was error to deny Janbach's motion to vacate its default.

The appeal from the order entered July 16, 1979 should be dismissed as academic. That order was superseded by the order granting reargument. The latter order should be re-

versed insofar as appealed from, and the motion to vacate the default judgment granted.

MOLLEN, P. J., COHALAN and WEINSTEIN, JJ., concur.

Appeal from an order of the Supreme Court, Westchester County, entered July 16, 1979, dismissed as academic. That order was superseded by a further order of the same court, entered August 15, 1979, which, upon reargument, adhered to the original determination.

Order entered August 15, 1979 reversed insofar as appealed from, and motion to vacate the default judgment granted.

Defendant is awarded one bill of $50 costs and disbursements to cover both appeals. Defendant's time to answer is extended until 20 days after service upon it of a copy of the order to be entered hereon, together with notice of entry thereof.