STATE OF NEW YORK, by ROBERT ABRAMS, as Attorney-General of the State of New York, Appellant, v THWAITES PLACE ASSOCIATES, a Limited Partnership, et al., Respondents.

First Department, March 8, 1990

**APPEARANCES OF COUNSEL**

*Susan Rowley* of counsel *(John W. Corwin* and *Jane M. Azia* with her on the brief; *Robert Abrams, Attorney-General,* attorney), for appellant.

*Paul F. McAloon* and *Blauman & McCabe* for respondents.

## OPINION OF THE COURT

RUBIN, J.

Petitioner Attorney-General of the State of New York commenced this special proceeding under the authority granted by General Obligations Law § 7-109. It seeks the return of rent security deposited pursuant to the General Obligations Law § 7-103 which respondents, the former landlords of the subject premises, failed to turn over to the receiver in a foreclosure proceeding as required by section 7-105 of the statute. Petitioner further alleges that defendants failed to pay to the tenants annual interest on the money deposited (General Obligations Law § 7-103 [2-a]). Petitioner therefore seeks a judgment directing respondents to remit the security deposits to the receiver and to pay interest thereon to the tenants.

In a judgment filed March 5, 1984, the IAS court dismissed the petition on the grounds that the owner and holder of the mortgage, the United States Department of Housing and Urban Development (HUD), was a necessary party to the proceeding, and as a matter of comity. Upon petitioner's motion to renew on the ground that HUD had no opposition to the proceeding, the matter was restored to the calendar by order dated February 19, 1987. On May 5, 1987, after conference, the IAS court directed respondents to submit a full accounting. Upon respondents' failure to comply, petitioner brought a motion dated May 23, 1988 to calendar the proceeding for a determination on the merits. By order entered December 9, 1988, the IAS court granted the motion to the extent of directing a reference to determine (1) the amount of security received from each tenant together with the interest due thereon, (2) the amount of outstanding rent owed by each tenant to respondent Thwaites Place Associates and (3) the net amount of security plus interest set off by any amount of rent found due for each tenant.

Petitioner appeals from this order on the grounds that (1) respondents are not entitled to apply the security deposits to rent alleged to be due and (2) that, in any event, respondents' entitlement to receive rent payments which became due while they retained ownership of the premises did not survive their loss of ownership interest in the premises upon foreclosure. Respondents, relying on the opinion of the Appellate Division, Second Department, in *Glass v Janbach Props.* (73 AD2d 106), argue that, irrespective of the provisions of article 7 of the

General Obligations Law, they have the right to apply any sum held as a security deposit to compensate them for damages sustained as the result of a breach of the lease. They contend that they properly applied amounts retained on deposit against outstanding rent owed by the tenants as of November 16, 1981. While the order appealed from does not expressly state as much, it is reasonably clear that the Referee is directed to determine the amount of the security offset by any rent owed as of this date.

A receiver for the property was appointed by order of the United States District Court for the Southern District of New York dated November 20, 1981. The order, which was apparently issued ex parte, recites, *inter alia,* that "plaintiff is granted immediate possession of * * * tenant's *[sic]* security deposits" and directs Thwaites Place Associates, its agents and employees to turn over the funds to the receiver. No appearance was made on behalf of the debtor, and a judgment of foreclosure was entered on default on December 22, 1981.

28 USC § 1345 invests the Federal courts with original jurisdiction over "all civil actions, suits or proceedings commenced by the United States, or by an agency or officer thereof expressly authorized to sue by Act of Congress." This jurisdiction extends to actions in foreclosure *(Benton v Woolsey,* 12 Pet [37 US] 27 [1838], District Court's jurisdiction sustained without question).

In its March 5, 1984 judgment dismissing the petition, the IAS court noted, "[i]t appears that the United States District Court has already directed the turnover of the funds to the United States Department of Housing and Urban Development in the cause of action in that court. To the extent that the petitioner seeks here relief which is inconsistent with that order *(e.g.,* turnover to the tenants), that inconsistency should be resolved by making application in the first instance to the federal court, particularly since there appears to be a continuing action there; because that court has already issued an order on the same subject, as a matter of comity it is appropriate to avoid conflict and permit that court to resolve the issue, consonant with the scope of its jurisdiction." While petitioner was subsequently granted leave to bring his petition anew on the ground that HUD had no opposition to the proceeding, neither party took issue with the court's ruling that relief from the terms of the District Court's order must be sought in that forum.

■ In our view, this order is dispositive of the issues raised upon this appeal. It clearly states that relief from the District Court's order directing turnover of the security deposits be sought in Federal court, and this directive is binding upon the parties as law of the case *(see,* Siegel, NY Prac § 448). The determination is based upon the sound principle of comity which is invoked to avoid unseemly conflicts between courts of concurrent jurisdiction *(see, Pennsylvania v Williams,* 294 US 176). Respondents do not attempt to attack the ruling of the Federal court collaterally by challenging its jurisdiction in this proceeding and are relegated to the remedies available in Federal court for relief from a prior judgment or order in accordance with the Federal Rules of Civil Procedure under rule 59 (e) or rule 60 (b) *(United States v Belanger,* 598 F Supp 598, 601). As this court has recently had occasion to observe, a party should not be able to obtain by default a result which he would not have been able to achieve by good-faith participation in the litigation process *(Boorman v Deutsch,* 152 AD2d 48).

■ The IAS court's observation that the relief sought by petitioner (judgment directing that the interest on the security deposits be turned over to the tenants) is inconsistent with the terms of the District Court's order (that the deposits be turned over to HUD) overlooks its substantive basis. The order of the District Court merely reflects State law on the disposition of security deposits upon appointment of a receiver (General Obligations Law § 7-105 [1]). Moreover, the premises were ultimately sold by the receiver to the tenants, who took title in the form of a cooperative corporation. In accordance with General Obligations Law § 7-105 (1), security deposits are required to be turned over to a purchaser. Although section 7-105 (2) provides that security held by a receiver shall be held "subject to such disposition thereof as shall be provided in an order" entered in a foreclosure action, we note that the District Court entered no order with respect to disposition by the receiver and, in any event, Federal foreclosure actions are governed by the substantive law of the State *(Metropolitan Life Ins. Co. v Kane,* 117 F2d 398 [7th Cir 1941]). Therefore, it is entirely appropriate that the security deposits be turned over to the tenants' cooperative, as the ultimate purchaser of the premises.

Finally, respondents claim that a landlord is entitled to unilaterally apply a security deposit to damages alleged to have been incurred as a result of a tenant's breach of the

lease *(Glass v Janbach Props.,* 73 AD2d 106, *supra; see also, Matter of Pal-Playwell, Inc.,* 334 F2d 389 [2d Cir 1964]). Petitioner, however, contends that security may only be applied upon termination of the landlord-tenant relationship. He argues that a distinction must be drawn between a lease which has been terminated, either by a final judgment of possession or according to its terms, and an ongoing landlord-tenant relationship.

The operative question, however, is not whether the lease has terminated but which party's financial status has become unsound prompting the appointment of a receiver. *Glass v Janbach Props. (supra)* illustrates the point. In *Glass* the tenant, Claudia Costumes, Inc.,' assigned its lease for the benefit of creditors, having defaulted in the payment of rent to Janbach Properties. The assignee, Glass, surrendered the lease to the landlord but sought to recover the security deposit held by Janbach to satisfy corporate debts. Janbach essentially took the position that it was a secured creditor by virtue of its possession, as trustee, of the security deposited with it by Claudia Costumes, Inc. The Second Department agreed with this position, holding that the landlord had a superior right to the deposit as compared with an unsecured creditor.

In the matter under review, by contrast, it is the creditor of the landlord for whose benefit a receiver has been appointed. Respondents clearly have no basis upon which to assert a superior interest in the security deposits as against the receiver appointed because of their own default in payment under the mortgage. *Glass v Janbach Props. (supra)* is therefore inapposite to the case at bar which is expressly governed by article 7 of the General Obligations Law.

It cannot be disputed that respondents have violated the General Obligations Law § 7-105, requiring that security deposits be turned over to a judicially appointed receiver. In *People v Elliott* (65 NY2d 446, 447), the Court of Appeals stated that, to establish a breach of this statute, it need only be demonstrated "that the defendant, in his capacity as landlord, collected security deposits from the tenants; that a receiver was judicially appointed; and that the receiver made a demand for the security deposits that was not complied with by the landlord". In that case, a receiver was appointed by Supreme Court in an action to foreclose a mortgage. There is no indication, however, that the court issued any order requiring the deposits to be turned over *(People v Elliott,* 125 Misc 2d 851, *revd* 65 NY2d 446, *supra),* and the defendant's liability

to the receiver attached by operation of the statute. The Court of Appeals went on to state that "the defendant may nonetheless raise as a defense that he no longer possessed the funds at the time the demand was made and that the funds were used in a manner provided for in the lease, albeit inconsistent with the statute" *(People v Elliott,* 65 NY2d 446, 447-448, *supra).*

This is precisely the position advanced by respondents in the instant matter. Their alleged application of their tenants' security deposits towards rent arrears is not a disposition expressly authorized by the statute (General Obligations Law § 7-105). The shortcoming in respondents' position lies not in the failure to state a cognizable defense but in the failure to raise it in the appropriate forum. The District Court's order is absolute in its direction that respondents turn over the security deposits to the receiver, without any qualification that the amount to be paid be set off by rent past due or any other item of damages claimed by the landlord. Leaving aside any question of credibility raised by the timing of respondents' asserted application of the deposits towards rent due, a mere four days before issuance of the order appointing the receiver, it is exclusively the authority of the District Court to modify its order to permit a setoff.

At this late date, even if comity were not a consideration in this case, general considerations of fairness to the parties and judicial economy preclude litigation of whether the landlord is entitled to a setoff *(Staatsburg Water Co. v Staatsburg Fire Dist.,* 72 NY2d 147, 153). It is unreasonable to expect tenants, some eight years later, to be able to produce evidence of rent payments made in 1981. The tenants are justified in having relied upon the District Court's order. Having failed to make any attempt to secure a modification of the Federal court's ruling, respondents cannot complain that it is unfair to require them to abide by it.

In view of the disposition of this appeal, it is unnecessary to reach petitioner's allegation that respondents commingled the security deposits with their own funds. We note only that commingling effects a conversion, giving the tenants entitlement to the immediate recovery of their deposits. It bars the landlord from claiming a setoff for rent against a trustee in bankruptcy, an assignee for the benefit of creditors and, by implication, a receiver in a foreclosure action *(Matter of Perfection Tech. Servs. Press [Cherno-Dalecar Realty Corp.],* 22 AD2d 352, 354-355, *affd* 18 NY2d 644).

10

Accordingly, the order of the Supreme Court, New York County (Martin Evans, J.), entered December 9, 1988, which ordered a hearing before a Referee to hear and report as to (1) the amount of security received from each tenant together with the interest due thereon, (2) the amount of outstanding rent owed by each tenant and (3) the net amount of security plus interest set off by any amount of rent found due for each tenant, should be modified, on the law, to the extent of directing the Referee to hear and determine only the amount of security received from each tenant together with interest thereon and remanding the matter to the IAS Part for further proceedings consistent herewith and, except as so modified, affirmed, without costs.

KUPFERMAN, J. P., ASCH, KASSAL and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on December 9, 1988, unanimously modified, on the law, to the extent of directing the Referee to hear and determine only the amount of security received from each tenant together with interest thereon and remanding the matter to the IAS Part for further proceedings as indicated and, except as so modified, affirmed, without costs and without disbursements.