[19 NYS3d 221]

Sonia Arroyo-Graulau, Appellant, v Merrill Lynch Pierce, Fenner & Smith, Incorporated, Respondent.

First Department, October 22, 2015

2

## APPEARANCES OF COUNSEL

*McLaughlin & Stern*, New York City (*Steven Hyman* of counsel), for appellant.

*Bressler Amery & Ross, P.C.*, New York City (*David J. Libowsky* of counsel), for respondent.

## OPINION OF THE COURT

Gische, J.

This action involves a dispute between plaintiff and defendant Merrill Lynch Pierce, Fenner & Smith, Incorporated (Merrill Lynch), regarding a securities account that had been held in the name of Alberto Arroyo, plaintiff's deceased father. Following Mr. Arroyo's death in 2010, Merrill Lynch delivered the account assets to the executors of Mr. Arroyo's estate, named in his August 22, 2008 last will and testament, which was admitted to probate in Surrogate's Court on October 25, 2011. Plaintiff's substantive claims in this action stem from her allegation that a 2003 letter sent by the decedent to Merrill Lynch makes plaintiff a direct beneficiary of the account, obviating the need for it to pass through the estate. Plaintiff asserts several causes of action against Merrill Lynch, the financial institution holding the account at the time of Mr. Arroyo's time of death, predicated on its failure to deliver the account assets directly to her in accordance with Mr. Arroyo's letter instructions.

Plaintiff previously petitioned the Surrogate's Court to vacate probate, claiming that the 2008 will was either the product of undue influence or that Mr. Arroyo lacked testamentary capacity to make it. Although the petition refers to the securities account and the 2003 letter, the ultimate relief

requested by plaintiff does not concern distribution of the account assets. The Surrogate's Court denied plaintiff's challenge to probate, and thus the earlier decree admitting the 2008 will to probate remained in force.

The motion court dismissed this action based upon principles of res judicata and collateral estoppel implicated by the prior Surrogate's Court proceedings. We now affirm, but solely on the basis that all of plaintiff's substantive claims, which are ultimately grounded upon alleged violations of New York's Transfer-on-Death Security Registration Act (TODSRA) (EPTL 13-4.1 *et seq.*), fail to state a cause of action.

 Res judicata does not apply in this case because a linchpin of the doctrine, that there be an identity of parties litigating against each other in the two actions, is missing (*City of New York v Welsbach Elec. Corp.*, 9 NY3d 124, 127 [2007]). The parties in the earlier Surrogate's Court action were plaintiff and the coexecutors of the estate of Alberto Arroyo. Although plaintiff served Merrill Lynch with her petition to vacate the decree admitting the 2008 will to probate, Merrill Lynch was not an interested party in that proceeding nor did it participate in it, having absolutely no right or interest whatsoever in decedent's estate. Collateral estoppel has no application here either, because the issues in the Surrogate's Court action are not identical to those raised here and were not "necessarily decided" by the Surrogate's Court (*Welsbach Elec. Corp.*, 9 NY3d at 128 [internal quotation marks omitted]). The only issue before the Surrogate to decide was whether the 2008 will should be admitted to probate. At no point did the Surrogate determine what assets actually constituted the probate estate, and she did not decide whether the securities owned by decedent at the time of his death were probate assets. By admitting the will to probate, the Surrogate did not assert authority over the account and did not implicitly or explicitly find that the securities account should be distributed as part of the estate. The will itself does not reference the securities account.

Admitting a will to probate involves the validity of the will and the designation of an estate representative (SCPA art 14), who is then responsible for, among other things, marshaling probate assets (*see Matter of Schultz*, 104 AD3d 1146, 1148 [4th Dept 2013]; *Matter of Skelly*, 284 AD2d 336, 336 [2d Dept 2001]). Disputes about particular assets are usually the subject of subsequently brought collateral proceedings, including

discovery, turnover and accounting proceedings (SCPA arts 21, 22). No party claims that there is any collateral proceeding concerning the securities account currently pending in the Surrogate's Court.

We disagree with our concurring colleague that principles of comity control the outcome of this appeal. They are not argued by the parties, nor do they apply. While there is no question that the Surrogate's Court could have exercised jurisdiction over the dispute under TODSRA if a proceeding or claim had been brought, there is no such proceeding or claim and the court did not exercise such jurisdiction. Consequently, based upon the procedural context in which this dispute is before this Court, we only reach the merits of the claim asserted.

We hold that under TODSRA, the 2003 letter sent by the decedent to Merrill Lynch did not create an enforceable right in favor of plaintiff to have the securities pass directly to her upon Mr. Arroyo's death. New York State passed TODSRA during the 2005 legislative session as part of a national effort to create a method of owning securities in a manner that would allow them to automatically transfer to an owner's designee upon death (L 2005, ch 325). Before its enactment, joint ownership with the beneficiary during a decedent's lifetime was the only option for a non-probate disposition of securities (Margaret Valentine Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 17B, EPTL art 13, part 4 at 696). Beginning in 1990 a majority of States enacted laws substantially similar to TODSRA, with New York being the 47th State to do so (McKinney's Cons Laws of NY, Book 17B, EPTL art 13, part 4, 2015 Pocket Part at 142-144 ["Table of Jurisdictions Wherein Act Has Been Adopted"]). The primary advantage of TODSRA is that securities need not pass through probate in order to be transferred upon the death of the owner (Margaret Valentine Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 17B, EPTL art 13, part 4 at 695). The beneficiary designation is effective only upon the owner's death; before then an owner is free at any time to cancel or change the designation without consent of the beneficiary (EPTL 13-4.6).

In order to take advantage of New York's law, certain categories of owners may request that a security be registered in beneficiary form (EPTL 13-4.2). The institution holding the securities account, however, is not required to either offer or accept a request to register a security in beneficiary form (EPTL 13-4.8). It is only if the owner requests that a security be held in beneficiary form and the entity holding the security

accepts the designation, that an enforceable contractual relationship is created between the owner and that registering entity, requiring the registering entity to act in accordance with the designation (EPTL 13-4.9). Under TODSRA, the registering entity has the sole right to establish the terms and conditions under which it will receive and implement requests to register securities in beneficiary form (EPTL 13-4.10), and TODSRA statutorily mandates that the registering entity have certain protections in the process (EPTL 13-4.8). A registering entity is not the owner of the security, but rather the person or entity that originates or transfers title to a security by registration, which includes a broker such as defendant (EPTL 13-4.1 [i]). Thus, under the statute, it is perfectly clear that a unilateral action by an owner of a securities account to designate a beneficiary in the event of death is not by itself sufficient.

Against this statutory framework, the 2003 letter relied upon by plaintiff is not a legally enforceable beneficiary designation under TODSRA. At most, it is a unilateral request by the owner of the account to have Merrill Lynch register the securities in beneficiary form. In order to have an enforceable registered beneficiary form under TODSRA, plaintiff would need to have a certificate or designation on the account itself indicating transfer-on-death instructions (EPTL 13-4.1 [h]; 13-4.5). Without that certificate or designation demonstrating the acceptance of the request, there are no rights under TODSRA. Without those rights (i.e., TODSRA), there are no independent contractual or common-law rights to compel distribution of securities outside of probate, unless the securities were jointly titled in decedent and the beneficiary's name before the decedent's death. Consequently, plaintiff has no direct statutory or common-law cause of action against Merrill Lynch for delivering the securities to decedent's coexecutors upon Mr. Arroyo's death.

Accordingly, the judgment of the Supreme Court, New York County (Eileen Bransten, J.), entered April 10, 2014, dismissing the complaint in its entirety, with prejudice, should be affirmed, with costs. The appeal from the order, same court and Justice, entered December 12, 2013, which granted defendant's motion to dismiss the complaint, should be dismissed, without costs, as subsumed in the appeal from the judgment.

TOM, J.P. (concurring). This contract dispute was resolved by a Surrogate's decree dated October 25, 2011, and Supreme

Court properly adhered to the principle of comity by dismissing the complaint with prejudice. Under the factual circumstances of this case, a court of coordinate jurisdiction cannot issue an order concerning a probate issue that already has been decided by the Surrogate's Court. Because Supreme Court lacks the authority to decide the issue, the merits are not properly before us and I decline to join in the majority's advisory opinion that the complaint fails to state a cause of action (*e.g. T.D. v New York State Off. of Mental Health*, 91 NY2d 860 [1997] [having decided that an agency lacked power to promulgate regulations, declaring them invalid on various common-law, statutory and constitutional grounds was an inappropriate advisory opinion]; *see also Cuomo v Long Is. Light. Co.*, 71 NY2d 349, 354 [1988]).

Plaintiff's father, Alberto Arroyo (decedent), maintained a securities account at defendant brokerage valued at some $1.2 million. In 2003, decedent sent a notarized letter to defendant directing that the account be made transferrable to plaintiff upon the event of either his death or disability. Although the complaint asserts that the instruction was accepted, it is apparent that defendant undertook no action to give it effect. In 2008, decedent made a will leaving plaintiff 50% of his estate, but in no event less than $500,000. The will made no mention of the securities account.

Upon Alberto Arroyo's death in 2010, defendant, over plaintiff's objection, turned over the proceeds of decedent's brokerage account to the executors of his estate. They commenced an action in Surrogate's Court to admit the will to probate, and plaintiff appeared by counsel in opposition. After the Surrogate rendered a decree admitting the 2008 will to probate, plaintiff brought a petition to vacate the decree and to direct, inter alia, that the executors return all assets received by the estate and immediately distribute no less than $500,000 to plaintiff. She contended that by the time the will was made in 2008, decedent was incompetent and in any event was subject to the undue influence of her cobeneficiaries. Plaintiff further argued that the 2003 notarized letter reflected the true testamentary intent of decedent, and that it should be given full force and effect. In opposition, the executors argued that decedent's letter to defendant should be rejected by the Surrogate as contrary to his testamentary intent, as set forth in the will.

The Surrogate found that plaintiff had failed to demonstrate the likelihood that she would be able to establish decedent's

incompetence, ruling that "there is not enough to open up this probate." The 2003 letter was never addressed, either at oral argument on the petition or in the court's decree. The court's order dated July 25, 2012 did provide, however, "for an advance distribution of her beneficial share under the will and directed the executor to pay her $500,000 on account of her legacy."

Plaintiff then commenced this action asserting breach of contract and various redundant claims, each seeking damages of not less than $600,000 from defendant (*Rockefeller Univ. v Tishman Constr. Corp. of N.Y.*, 240 AD2d 341, 342 [1st Dept 1997], *lv denied* 91 NY2d 803 [1997] [causes of action seeking the same benefit-of-the-bargain damages merely duplicate a breach of contract claim]). The complaint alleges that the 2003 letter suffices as a registration of beneficiary pursuant to EPTL 13-4.1 *et seq.*, which provides for the contractual, nontestamentary transfer of the proceeds of an account to a designated beneficiary upon the death of the account holder (EPTL 13-4.9).

Without reaching the merits, Supreme Court dismissed the complaint with prejudice on the grounds of comity—not res judicata or collateral estoppel as the majority contends. The court stated as follows: "You can't come now and actually ask this [c]ourt to sit as an [a]ppellate [c]ourt to [S]urrogate Glen. If you didn't like the decision that Surrogate Glen made, then the argument should have been made before the Appellate Division in the due course to appeal that decision." Counsel interjected the same argument now advanced, asserting that "Surrogate Glen did not rule as to whether the Merrill Lynch assets were testamentary assets," which prompted the following reply: "THE COURT: Sir, it was before her, and the fact that she did not, it was an appealable issue. The fact that you did not appeal, makes it now moot before this [c]ourt." The order has since been reduced to a judgment entered April 10, 2014.

On appeal, plaintiff does not directly address the issue of coordinate jurisdiction. She merely argues that res judicata should not be applied to bar this action because the Surrogate did not explicitly rule that defendant is under no contractual duty to distribute the proceeds of decedent's brokerage account to plaintiff in accordance with his 2003 letter. In opposition, defendant argues that res judicata is applicable because this action involves the same claims and arises out of the same facts as those adjudicated in the course of the probate proceeding. Because Supreme Court based its order of dismissal on the

principle of comity, holding that it lacked the authority of an appellate court to disturb the Surrogate's order, and because plaintiff attacks the propriety of that ruling, the issue is squarely before us. That the parties have not expressly raised the issue of comity, or do not comprehend the issue, does not obviate its significance. Neither Supreme Court nor this Court has jurisdiction to vacate the Surrogate's ruling.

Analysis begins with the well-settled principle that an order or judgment of a court binds the parties subject to its mandate until such ruling is either vacated by the court that rendered it (CPLR 5015 [a]) or set aside on appeal (*Matter of Murray v Goord*, 298 AD2d 94, 97 [1st Dept 2002], *affd* 1 NY3d 29 [2003]). Alternatively, a party may collaterally attack a judgment on the ground that the issuing court lacked jurisdiction (*see Boorman v Deutsch*, 152 AD2d 48, 54 [1st Dept 1989], *lv dismissed* 76 NY2d 889 [1990]). How the court arrived at its ruling and even the propriety of that ruling are immaterial until such time as a party pursues an available means of redress. Significantly, plaintiff's petition to vacate the Surrogate's decree argued that, based upon decedent's letter instructions to defendant, she became entitled to receive the proceeds of his brokerage account at the time he allegedly became incompetent due to a stroke in August 2008. When her petition to open up the probate proceedings was denied, however, plaintiff did not avail herself of an appeal from that ruling, the only other direct means of obtaining relief from the court's decree. In the absence of an appeal or any contention that Surrogate's Court lacked jurisdiction to probate the will, the distribution of some $500,000 in estate assets to plaintiff—which implicitly includes the funds defendant turned over to the executors—is governed by an order, by which plaintiff is bound.

The operative question is not, as plaintiff contends, whether the principle of res judicata bars the parties from challenging the Surrogate's decree admitting the will to probate; rather, the determinative issue is whether considerations of comity, not res judicata, deprive Supreme Court of the authority to hear this dispute. A court of coordinate jurisdiction is precluded from issuing any ruling at variance with an existing order or judgment that is binding upon the party seeking to vacate or modify its terms (*see Gee Tai Chong Realty Corp. v GA Ins. Co. of N.Y.*, 283 AD2d 295, 296 [1st Dept 2001]). The salutary purpose of this rule is to avoid potential conflicts that might

result from disparate rulings on the same subject matter (*see State of New York v Thwaites Place Assoc.*, 155 AD2d 3, 7 [1st Dept 1990], citing *Pennsylvania v Williams*, 294 US 176 [1935]; *see also Pacesetter Sys., Inc. v Medtronic, Inc.*, 678 F2d 93, 96 n 3 [9th Cir 1982]; *Product Eng'g & Mfg., Inc. v Barnes*, 424 F2d 42, 44 [10th Cir 1970]). Observance of the doctrine requires a court to avoid taking any action at variance with measures taken, or even under consideration, by another court of commensurate status, including a court located in a jurisdiction other than New York (*see White Light Prods. v On The Scene Prods.*, 231 AD2d 90, 93 [1st Dept 1997]). As stated by the Second Circuit in *In re Hines* (88 F2d 423, 425 [1937]):

> "It is well established that a judge may not overrule the decision of another judge of co-ordinate jurisdiction . . . Such a rule is essential to an orderly and seemly administration of justice . . . It is equally applicable when an issue has been submitted to the first judge and has not yet been decided by him. To permit another judge to rush in and snatch [the] decision from his mouth is not to be tolerated; it is a breach of comity which, if sanctioned, could only lead to unseemly conflicts of decision and to protracting the litigation" (*see also George W. Collins, Inc. v Olsker-McLain Indus.*, 22 AD2d 485, 488-489 [4th Dept 1965]).

Plaintiff argues that despite being a party to the action before the Surrogate, she is not bound by the decree. The intimation is that because the contract arising from decedent's 2003 letter instruction to defendant was not specifically addressed in the probate proceedings, the issue of whether defendant properly turned over to the executors the funds held in the brokerage account can still be adjudicated.

As stated by this Court, "[a] party to a lawsuit cannot sit by idly while a contract, to which he is also a party, is judicially construed without being precluded by the result" (*Buechel v Bain*, 275 AD2d 65, 74 [1st Dept 2000], *affd* 97 NY2d 295 [2001], *cert denied* 535 US 1096 [2002]). By deciding that the account proceeds—the particular res at issue—should be distributed as part of the estate, the Surrogate necessarily decided that the distribution is testamentary, precluding the contrary adjudication, now proposed, that the funds should be passed as a nontestamentary distribution pursuant to a contract with defendant.

It is dispositive that the Surrogate has asserted authority over the disputed funds as assets of the estate, and no other court of equal status may purport to usurp that court's exercise of jurisdiction. As Supreme Court aptly noted, the issue of whether the disputed funds are testamentary assets was before the Surrogate and "the fact that she [ruled that they were testamentary], it was an appealable issue." Plaintiff never sought to relitigate this issue before the Surrogate or appeal from the court's ruling, there is absolutely no justification for permitting plaintiff to maintain a redundant action in a coordinate forum. Moreover, there is no question that the Surrogate has not only exercised jurisdiction over the disputed funds but decided that they should be distributed under the will, having directed the executor to distribute $500,000 to plaintiff "on account of her legacy."

To suggest that Supreme Court may entertain the same issue and make a contrary or inconsistent disposition based on the contract between the parties, which will adversely affect the Surrogate's ruling, invites chaos in judicial proceedings. The majority invites a party that is unhappy with a ruling obtained in one forum to commence a different action in a different forum regarding the same subject matter—forum shopping after the fact. This Court has consistently held that a party may not resort to a second forum to obtain relief explicitly or implicitly denied in the forum originally designated to hear the matter (*see e.g. All Terrain Props. v Hoy*, 265 AD2d 87 [1st Dept 2000]; *Thwaites Place Assoc.*, 155 AD2d at 7), thereby attempting to achieve by indirection a result that is directly foreclosed (*see Blake Elec. Contr. Co. v Paschall*, 222 AD2d 264, 267 [1st Dept 1995]). It is enough that the Surrogate has decided that the funds sought in this action should be distributed as part of the estate. Were plaintiff permitted to pursue her contract claim before Supreme Court and were ultimately to prevail in this action, this Court would then be confronted with "the anomaly of an unimpeached final decree of the Surrogate's Court . . . and a judgment of the Supreme Court nullifying the effect of that decree" (*Grossman v Kass*, 124 NYS2d 416, 418 [Sup Ct, NY County 1953]), a situation the law regards as intolerable (*see George W. Collins, Inc.*, 22 AD2d at 488-489). Thus, Supreme Court properly declined to entertain this dispute beyond its "jurisdiction to decide whether it has jurisdiction in [this] particular matter" (*Matter of Baron & Vesel, P.C. v Gammerman*, 101 AD2d 763, 763 [1st Dept 1984],

*appeal dismissed* 63 NY2d 671 [1984], 63 NY2d 677 [1984]; *but see Gitelson v Quinn*, 118 AD3d 403 [1st Dept 2014] [allowing a contract action to proceed where the relief sought would abrogate the distribution of an estate asset made by the Surrogate]).

Because disposition of this matter is governed by the principle of comity, it is of no moment that *defendant* is not a party to the probate proceedings; however, plaintiff, as a party, is constrained to litigate in that forum. If she is aggrieved by the decree admitting the will to probate, she must seek vacatur from the court that issued it (CPLR 5015), given that she failed to pursue the alternative of taking an appeal from the Surrogate's ruling.

In the present procedural context, this Court is in no better position to afford the relief plaintiff seeks. While we may entertain the appeal from Supreme Court's judgment, our jurisdiction to vacate or modify a judgment or order is limited to an appeal taken from such judgment or order by an aggrieved party (CPLR 5511). Since this appeal is taken from the judgment entered in Supreme Court, the Surrogate's ruling is not before us, and we are without jurisdiction to assess the propriety of the decree or otherwise disturb any order entered in connection therewith in the course of appellate review.

Accordingly, the judgment should be affirmed.

SAXE and MANZANET-DANIELS, JJ., concur with GISCHE, J.; TOM, J.P., concurs in a separate opinion.

Judgment, Supreme Court, New York County, entered April 10, 2014, affirmed, with costs. Appeal from order, same court entered December 12, 2013, dismissed, without costs, as subsumed in the appeal from the judgment.